# CHARLESTON.

### HOFFMAN *v.* SHOEMAKER.

Submitted September 8, 1910.    Decided April 25, 1911.

1. JUDGMENT—*Conclusiveness—Trespass Quare Clausum Fregit.*
   A judgment for the plaintiff in an action of trespass *quare clausum fregit* against a defendant, claiming a way over the premises on which the act of alleged trespass was done, is not conclusive of the right claimed by the defendant, unless it is shown to have been relied upon by the latter as a defense and actually litigated in the action.  (p. 236).

2. EASEMENTS—*Ways.*
   A grantor may claim a way over the granted premises, as reserved by implication, if it is shown to be strictly necessary to the use and enjoyment of adjacent land retained by him, and the intent to reserve it is not negatived by any express terms of the deed.  (p. 237).

3. SAME—*Grant or Reservation by Implication—Ways—Necessity for Continuity.*
   The legal principle, requiring an easement to be "continuous" as a requisite to a grant or reservation thereof by implication, is not applicable to a way.  (p. 240).

(ROBINSON, JUDGE, dissents).

Appeal from Circuit Court, Mineral County.

Suit by Charles S. Hoffman against Charles W. Shoemaker. Decree for plaintiff, and defendant appeals.

*Reversed and Dismissed.*

*H. K. Drane* and *W. H. Griffith,* for appellant.

*Frank C. Reynolds* and *Taylor Morrison,* for appellee.

POFFENBARGER, JUDGE:

In this suit by a land owner, to enjoin the defendant from the use of a right of way over his land, claimed in part by a deed and in part by prescription and long user, the defenses were a former adjudication in favor of the plaintiff and insufficiency of the defendant's evidence to establish the right claimed by him. The decree appealed from, general in form and without indication as to its legal basis, is for the plaintiff and perpetually enjoins the defendant from the use of said right of way.

The plaintiff owns three contiguous tracts of land, adjacent to the northwestern end of which lies the farm of the defendant. From the latter an old road, holding a southeasterly course, runs over the farm of the plaintiff, consisting of said three tracts, in a southeasterly direction, to a public road called the "New Creek Pike." The evidence conclusively shows that this road has been used by persons residing back of the plaintiff's land for a long time, forty or fifty years, and by the defendant and his predecessors in title for at least twenty-five or thirty years and possibly for the whole period aforesaid. If nothing else appeared, this would make, under our decisions, a clear case of a right of way by prescription. But there are some other facts to be considered. The three tracts of land constituting the plaintiff's farm seem to have been owned at one time by James B. Rees, as a single tract. The deeds exhibited indicate this. By deed dated Feb. 6, 1884, said Rees conveyed to Joseph W. Parish a tract of about 56 acres practically out of the center of what now constitutes the plaintiff's farm. In that deed, he granted to Parish a right of way over the land thereby conveyed, determinable as to location by the old existing road, out to the public road. He also reserved a right of way over the land granted to Parish "for the use and benefit of William Leatherman, his heirs and assigns." At that time, Leatherman owned the farm now owned and occupied by the defendant. Hence, this reservation constituted an exception from the grant to Parish in favor of Leatherman, the predecessor in title of Charles W. Shoemaker, the defendant here. The right of way,

so given to him or recognized by these deeds, did not extend up
to Leatherman's land, but he used and enjoyed a right of way
over Rees's land down to the road so provided for him over the
Parish land. Robert Burkhiser having apparently acquired the
Parish land and the James B. Rees land lying between it and
the public road, containing 104 acres, conveyed both of these
tracts to the plaintiff, C. S. Hoffman, by deed dated April 3,
1900. Just one year later, William S. Leatherman conveyed to
Charles W. Shoemaker his tract of land. In the meantime, some
other conveyances had taken place. S. S. Rees, who, in some
way, became the successor of James B. Rees to the northwestern
part of the Rees land, adjoined by the Leatherman land, con-
veyed it to A. T. Leatherman, the son of William S. Leather-
man, by deed dated December 10, 1889. A. T. Leatherman, by
deed dated December 15, 1889, conveyed to his father, William
S. Leatherman, a small portion of this land, containing about
18 acres. A part of the old road leading from Leatherman's
land down to the Parish tract was wholly on this 18 acres and
the balance of it on the line between it and the other land then
held by A. T. Leatherman. The evidence tends to show that
W. S. Leatherman made this purchase to strengthen and secure
his right of way. The Leathermans being unable to pay for this
land, Rees took it back, by a deed from A. T. Leatherman, dated
December 11, 1895; W. S. Leatherman having reconveyed the 18
acres to A. T. Leatherman on the same day. In this reconvey-
ance W. S. Leatherman did not reserve his road over the 18 acres,
but, from the date of that deed, Dec. 11, 1895, until April 3,
1901, he continued to use the road without objection from Rees,
and also without objection from Hoffman, who acquired the Rees
land by deed dated April 3, 1900. Thereafter Chas. W. Shoe-
maker, who became the owner of the Leatherman land April 3,
1901, used the road over this Rees land without objection from
the plaintiff until about the year 1903. Some time in the year
1903, the latter placed a wire fence across the road, and the de-
fendant applied for, but did not obtain, an injunction, and the
fence was removed. Plaintiff says he removed it and suffered
the defendant to continue the use of the road, but not that there
was any agreement between them or that, with the consent of
the defendant, the subsequent user was permissive only. All

that appears is that the fence was put up, the injunction applied for, the fence removed, in two or three days from the date of its construction, and the defendant continued the use of the road. Later, there were some negotiations between the parties in an effort to compromise and settle the controversy by agreement. This having failed, the plaintiff, sometime in 1908, locked the gates and built additional fences across the road. These the defendant opened by cutting a gate from its hinges, cutting a wire fence and hitching a horse to another fence and a gate and pulling them down. Thereupon the plaintiff instituted an action of trespass against him and recovered a judgment for $1.50, which is the one relied upon as a former adjudication.

As to the effect of a judgment in such an action upon title, the authorities are in great conflict. *Dickinson* v. *Mankin,* 61 W. Va. 429; *Clark* v. *Dower,* 67 W. Va. 298. In the latter case, the judgment was held not to be appealable, although a special plea was entered by the defendant, setting up a right of way by prescription. In the former, the title was held not to have been settled and determined, although the defendant entered both a plea of not guilty and plea of *liberum tenementum,* and evidence was adduced on the question of title. No good purpose would be subserved here in attempting to analyze or reconcile the conflicting authorities, or deduce from them the true rule, since we are of the opinion that the right claimed by defendant was not litigated in the action at law. The only plea shown by any order entered in the case was that of not guilty. A paper is certified by the clerk of the trial court which purports to be a copy of a special plea, setting up the right of way by prescription, but we find no order showing it to have been tendered or filed, or in any way made a part of the record. Though it is not clearly shown that any of the evidence used in that action has been made a part of the evidence in this cause, or that the right was litigated and determined, what on its face seems to have been evidence used in the action at law, has been incorporated in this record. No witness testifies that it is the evidence in that case nor does the clerk of the circuit court certify that it was. However, conceding it to be such, it only shows the title of the plaintiff to the land, the erection of fences and locking of gates across the road and the breaking of the same by the defendant and his

continued use of the road. No evidence of any prescriptive right was introduced or offered by the defendant. Hence, we are clearly of the opinion that neither by plea nor evidence was the defendant's right of way put in issue. So we hold the defense of former adjudication to be unsustained.

The all important question remaining to be considered is the effect of the deed made by William S. Leatherman to S. S. Rees, conveying land on which a part of the road is without a reservation thereof. Ordinarily, a grantor is not permitted to set up, by parol, any reservation against his deed, purporting on its face to grant all of his right, title and interest in a tract or parcel of land. Of course, he cannot claim any of the land against his deed. Such a construction of a deed would render it nugatory and defeat its purpose in whole or in part. Under a well settled rule, it must be so construed as to give it effect to the extent of its entire subject matter. It is nevertheless possible for a grantor to claim, under exceptional and peculiar circumstances, an easement over the land granted as appurtenant to other lands retained by him. This easement is not the land itself and the retention thereof does not wholly defeat the deed as to any part of it. It is a mere right of use, not title. In such cases, the question is one of intention, but the circumstances must be such as to disclose the existence of that intent beyond any reasonable doubt, and such intent must arise from necessity, else the doubt is not excluded and the reservation cannot be maintained. The law on this subject is stated as follows in Jones on Easements, sec. 136: "There is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous and strictly necessary for the enjoyment of the land retained. A grantor cannot derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation." Again, in section 138, this author says, quoting from Lord Justice Cotton, "So again where there is existing at the time that which is said to be a continuous easement, and of necessity—not an easement strictly, but that which is in the nature of an easement—as a way of necessity; of that there is or may be an implied reservation. Take the common case of a man having a field, which he does not sell, in the midst of land

which he sells; of course it is implied that he intends to have
the power of using the field not sold, and not to give the ex-
clusive right or control over it to the person to whom he sells
the surrounding land, and a way over that is said to be a way of
necessity, and that is reserved without express words as an im-
plied reservation."

In the textbooks and decided cases, we are told that the ease-
ment, to pass to the grantee, or be retained by the grantor, by
implication only, must be apparent, continuous and necessary.
Naturally, the use of these terms is sometimes confusing, for
the reason that they are employed in the long course of discus-
sion and not always defined. Each has its own definition with
which the reader is supposed to be familiar. An apparent ease-
ment need not be actually visible. It is enough that the facts
and circumstances, fairly construed, will disclose it, as in the
case of a drain pipe under the surface into which the water is
conducted from a roof. There are different kinds of necessity.
A thing may be necessary in the physical sense or in a practical
or legal sense. So the word "continuous" has its different mean-
ings. In a practical sense, a road is continuous as long as it is
maintained and used, although the use is unautomatic and, from
necessity, intermittent. But it is not continuous within the
meaning of the technical law of easements. The distinction
made is that a continuous easement is one which operates with-
out the interference of man, such as a water-course or drain
pipe. A way is said not to be continuous, because, in the use of
it, there is involved the personal action of the owner, in setting
his foot upon it or driving his team or cattle upon it. Jones on
Easements, secs. 143 to 153, inclusive. Judges and text writers
do not always stop to define these terms. Hence the danger of
misapprehension on the part of the reader and the necessity of
noting the facts in respect to the terms used.

In some decisions, it has been held, though perhaps erroneous-
ly, that an apparent and technically continuous easement would
always pass to a grantee, or be reserved to the grantor, by im-
plication, even though it did not appear to be necessary. In
other words, if the owner of two adjacent pieces of property,
having subjected one to the use of the other, by making a drain
over it or running an under-surface ditch through it, or other-
wise connected them, and this connection was apparent, it was

a continuous easement, because it was self-acting, and, being apparent, if he conveyed away the servient estate, without an express reservation of the easement, it was reserved to him by implication, as matter of intent arising from the known facts and circumstances, and without any consideration of the element of necessity. *Lampman* v. *Milks,* 21 N. Y. 505. For this proposition, Selden, Judge, delivering the opinion, referred to the case of Coppy, 11 Henry VII, 25, cited from the Year Books by Gale & Whately on Easements, p. 41. In *Nicholas* v. *Chamberlain,* Cro. Jac. 121, "It was held by all the court, upon demurrer, that, if one erect a house, and build a conduit thereto, in another part of his land and convey water by pipes to the house, and afterwards sell the house with the appurtenances, excepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house, because it is necessary and *quasi* appendant thereto; and he shall have the liberty by law to dig in the land for amending the pipes, or making them new, as the case may require." That case has been regarded as authority for the same proposition. Another case propounding the doctrine is *Robins* v. *Barnes,* Hob. 131. In these old cases, it is said to have been held that, if the common owner, having used the two properties as connected by a lead pipe or some other continuous arrangement, sold one piece of the land and cut that pipe or otherwise broke the connection, he thereby altered the rule by signifying intent to destroy the easement. He thereby rendered the easement no longer continuous in nature, and overcame the persumption of intent either to grant or reserve the easement, arising from the condition of the property.

This rule of construction came, in time, to be regarded as too liberal, and the later authorities added the element of necessity, holding that an easement of this kind must be not only apparent and continuous, but also necessary. This addition has, in later years, been a subject of learned and earnest discussion in both England and America, and is now generally accepted. Accordingly, we find this in Jones on Easements, sec. 156: "To establish an easement by an implied reservation, where there has been a unity of possession, and a subsequent sale of a portion of the land over which the easement is claimed, such easement must have been apparent, continuous and necessary at the time of

such sale." As authorities for this proposition, the author cites cases involving, not ways, but drains and other such easements as would have been retained by implication, under the old common law, without the element of necessity. They are *Crosland* v. *Rogers*, 32 S. C. 130, *Ferguson* v. *Witsell*, 5 Rich. L. 280, 57 Am. Dec. 744, and *Elliott* v. *Rhett*, 5 Rich. L. 405, all involving drains. There is reason for saying a drain must be continuous, for that is its nature. It is one of its essential elements or qualities. It is continuous by operation in and of itself without human aid. To be a drain, therefore, it must have this quality, and, to have an easement for drainage, a dominant owner must have either an artificial or a natural means of continuous drainage though continuous and unceasing flowage is not necessary. Close scrutiny of the history of the use of the terms "apparent" and "continuous" will disclose that they are applicable only to technically continuous easements or *quasi*-easements and not at all to non-continuous easements. The latter rest upon necessity only, cannot be continuous and probably need not be apparent.

This quality or characteristic of continuousness does not belong to a right of way. Such an easement is not self-operating. It is only a place in which its owner operates. So it is not continuous in the technical sense of the word. Jones on Easements, sec. 143. Therefore, to say that, in order to pass to a grantee, or be retained by a grantor, by implication, a right of way must be apparent, continuous and necessary, is to state that which can never be true of such an easement, and also that it never can pass or be retained in that way. It seems clear, therefore, that a right of way, to pass or be retained by implication, need not be continuous. If it must, it never can be the subject of an implied grant or reservation. That it can be is put beyond doubt by authority, both English and American. A way of necessity may be reserved to a grantor by implication, though it is confessedly not continuous. *Pinnington* v. *Gallond*, 10 Eng. Rul. Cas. 35, 9 Ex. 1. In that case Martin, Baron, said it might be both granted and reserved by implication. For the first proposition, he quotes from the note of Mr. Serjt. Williams to the case of *Pomfret* v. *Ricroft* as follows: "Where a man, having a close surrounded with his own land, grants the close to another in fee, for life, or for years, the grantee shall have a way over

the grantor's land as incident to the grant; for without it he cannot derive any benefit from the grant." As to the other proposition he said: "There is no doubt, apparently, a greater difficulty in holding the right of way to exist in this case than in the other; but, according to the same very great authority, the law is the same, for the note proceeds thus: 'So it is when he grants the land and reserves the close to himself;' and he cites several authorities which fully bear him out: *Clark* v. *Cogge, Staple* v. *Heydon, Chichester* v. *Lethbridge,* Willes 72, note. It no doubt seems extraordinary that a man should have a right which derogates from his own grant; but the law is distinctly laid down to be so, and probably for the reason given in *Dutton* v. *Taylor,* that it was for the public good, as otherwise the close surrounded would not be capable of cultivation." That case is one of actual decision, not mere dictum. In discussing the law generally, in a case not involving a right of way nor a continuous easement, Bacon, Chancellor, said in *Wheeldon* v. *Burrows,* 12 Ch. Div. 31, 44: "But I take it that the rule of implication is founded upon the mere necessity of the case, and the impossibility of admitting that the contract and the intention of the parties to it would be complete without the implication. The subject of the implication is held to have been involved in the terms of the contract, and the justice and honesty of the transaction require that the law should supply that, the expression of which by the inadvertence of the parties has not been expressed in words. Upon this principle every one of the cases referred to is founded, and all are reconcilable; and no case has been cited, nor, as I believe, can any be found, in which an implication has been made not based upon necessity and the justice which that necessity imperatively calls into active operation." This is a broad and liberal view, stripped of all fanciful, narrow and technical considerations, not applicable to any particular kind of easements, but universally reducing the whole question to one of intent, determinable by the rule of necessity. It accords with the just and reasonable observation found in Jones's quotation from Lord Justice Cotton in *Russell* v. *Watts,* 25 Ch. Div. 559. The rule of necessity as justifying a grant or reservation of a right of way by implication is recognized and asserted in *Fetters* v. *Humphreys,* 18 N. J. Eq. 260, but the way was there denied, because it was not necessary to the beneficial en-

joyment of the land. The chancellor in that case distinguishes between continuous and non-continuous easements, holding that the former may pass by implication without necessity, but that the latter cannot. After reviewing the decisions at great length, he said: "Discontinuous easements not constantly apparent, are continued or created by a severance, only when they are necessary." He concluded by saying: "The property of the complainant could be better and more beneficially enjoyed by the use of this alley, as it was used by the testator in his lifetime, but it is not necessary to the beneficial enjoyment of it. The right of way, therefore, cannot arise by implication from the devise to her." The proposition, with its limitations, is also recognized in *Warren* v. *Blake,* 54 Me. 276, the court holding that a right of way may be reserved by implication in a case of strict necessity, but denying it in the particular case, because such necessity was not shown. It is stated in the same way in *Casberry* v. *Willis,* 7 Allen 364. In that case, Mr. Justice Hoar said: "A way, when it is strictly a way of necessity, has been considered as falling under the same rule, and as passing to the grantee, or being reserved by the grantor, without any express words of grant or reservation. In the case at bar, the way, and other privileges, claimed by defendant, were not annexed to the sugar house estate by any natural or legal necessity." In *Pingree* v. *McDuffie,* 56 N. H. 306, the Court held as follows: "A party having conveyed a portion of his land over which was the only means of access to the remaining land—*Held,* that a right of way by necessity to the remaining land was reserved." A right of way to the grantor by necessity was sustained in *Davies* v. *Sear,* L. R. 7 Eq. Cas. 427. In this state, a way of necessity may be granted by implication. This is so well settled that no authority need be cited for it. Like reason for an implied reservation is obvious.

These authorities amply justify the view that Leatherman impliedly reserved the right of way over the land he granted to Rees, by his deed of December 11, 1895, if such right of way was strictly necessary to the enjoyment of his property. He clearly has a right of way by prescription over the Parish and Burkhiser lands down to the public road. He had formerly enjoyed the use of a road over the Rees-Leatherman 18

acres, down to the terminus of the old road at the northern Parish line. The reservation of this, if sustainable, completed his outlet to the public road. Was such reservation necessary to the enjoyment of his land in the strict and extreme sense of the term? On this question, the evidence is not as complete as it might have been made. It is not shown that the defendant's lands are surrounded by lands of strangers over which he has no right of way. But it seems to be conceded that neither he nor his predecessors in title had any other means of access to the land. The plaintiff himself told the defendant, shortly after he had purchased it, he was surprised at his purchasing it, if he had no outlet or no right of way from it, and that "he had no right of way out of the land and he couldn't get in and out of it;" and admits that thereupon the defendant said he had the right of way he now claims. This question was propounded to the defendant: "Have you any other outlet, or means by which you can get from your farm to the New Creek Pike, except over the road running through the Hoffman farm?" His answer was: "No, sir. None at all." Leatherman was put on the witness stand, and, in the course of his examination, this question was propounded to him: "You may state, Mr. Leatherman, whether or not this is the only way by which you could get out from the place formerly owned by you, which you sold to Charley Shoemaker, over this roadway that you have talked about?" His answer was: "Well, there could be other ways you could get out, of course, but its the only way there has been since I have been there. It was always a free road, so we could get in and out as we pleased, so we kept the gaps up." This answer seems to relate to the physical possibility of making a road in a different location, upon the same land or upon other lands, if the right had been or could be acquired for it; but it does not import any right to make a road over any other land, or that defendant's lands extend to a public road or any other he has the right to use. On the whole, we think it sufficiently appears that neither the defendant nor his predecessor could get out over his own land to any public road or had any right of way over any lands, other than those in question here.

These conclusions result in a reversal of the decree, dissolution of the injunction and dismissal of the bill.

*Reversed and Dismissed.*