# CHARLESTON.

MILLER v. SKAGGS.

Submitted February 13, 1917.   Decided February 20, 1917.

1. EASEMENT—*Grant—Necessity.*
   To raise an implied reservation or grant of an easement the existing servitude must at the time of the deed be apparent, continuous and strictly necessary. (p. 647).

2. SAME—*Rights of Purchaser—Benefits and Burdens.*
   It is a general rule of the common law, applicable in such cases, that when the owner of two tenements sells one of them, or the owner of an entire estate sells a portion thereof, the purchaser takes the tenement or portion sold with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains. (p. 648).

3. SAME—*Drain—Visibility.*
   An apparent easement need not be actually visible. It is enough that the facts and circumstances, fairly construed, will disclose it as in the case of a drain pipe under the surface into which the water is conducted from a roof. (p. 648).

4. SAME—*Reservation or Grant—Necessity.*
   The rule of strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity, as distinguished from mere convenience. (p. 649).

79 W. Va.

Error to Circuit Court, Summers County.

Action on the case for damages by Janet E. Miller against C. H. Skaggs. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*T. N. Read,* for plaintiff in error.

*Wm. H. Sawyers* and *R. F. Dunlap,* for defendant in error.

MILLER, JUDGE:

An action on the case for damages for obstructing a private sewer serving the adjoining properties of the parties and other properties and running under and across a corner of defendant's lot at the rear end thereof.

Plaintiff obtained a verdict and judgment for three hundred dollars, and defendant sued out the present writ of error.

One J. A. Graham once owned both properties, and then in connection with the owners of adjoining properties built and maintained the sewer in question. All properties served, including that of the defendant, are situated on a hill side; defendant's property faces Second Avenue, as does the property of one Cundiff, at the corner of James Street and Second Avenue, and as does the hotel property also of plaintiff, that of the defendant being situated between the Cundiff property and plaintiff's hotel property; and the sewer in question after leaving the lot of defendant runs down between his property and the plaintiff's lot, and connects into the city sewer on Second Avenue. The property of plaintiff affected by the defendant's act complained of, however, fronts on James Street immediately back of the Cundiff property, and between it and the property of one James, and below it and the property of one Pucket, the other properties connected into said private sewer.

The sewer in question serves both as a sanitary and a storm sewer, and there is connected into it not only water closets, bath tubs, and sinks from the respective houses on the lots, but down spouts from the roofs thereof are also run into it, the latter on the plaintiff's property evidenced by terra cotta

tiling projecting above the ground and plainly visible from
defendant's property; and the lateral pipe or sewer from the
Cundiff property crosses the entire width of defendant's
property back of his house and is connected into the sewer
before leaving his lot. The evidence shows that the main
trunk of this private sewer occupies the natural channel for
the drainage of the surface waters from the hill side and is
practically coincident with an old drain or gutter once open
and defined for a part of the way at least across defendant's
lot by a stone curbing, but at the time of the sale and con-
veyance to defendant the sewer had been laid under ground
and was in use and serving the properties of all parties con-
nected therewith.

Defendant obtained his property by deed dated November
10, 1909, and the injuries complained of occurred on or about
September 30, 1915. A few days prior to that time defend-
ant had dug down to and torn up the sewer where it crossed
under his lot, and stopped it up with old rags and clothing,
completely shutting off the flow of the water and sewage, and
a heavy rainfall occurring thereafter and at the time of the
injury, the water and sewage backed up and overflowed the
basement of plaintiff's house, resulting in the damages for
which she sued.

Neither in the deed from Graham to his immediate grantee,
nor in any of the intermediate deeds down to and including
the deed from one Butler and wife to defendant was there
reserved in terms any easement over the lot of defendant for
the purpose of said sewer, and it is conceded that if such
easement exists it is one implied in the original grant by
Graham and the intermediate deeds referred to.

In accordance with the weight of modern English and
American decisions we have decided that an implied reser-
vation or grant of an easement can only arise where at the
time of the deed or grant the existing servitude is apparent,
continuous, and strictly necessary to the enjoyment of the
dominant estate. *Hoffman* v. *Shoemaker*, 69 W. Va. 233, and
authorities cited.

And there seems to be no material distinction in the appli-
cation of this principle between an implied reservation and

implied grant of such an easement, except that in a grant the terms of the grant according to the general rule is to be construed most strongly against the grantor in favor of the grantee. 9 R. C. L. 765, and cases cited.

And there is a well recognized rule of the common law, applicable to cases of implied reservations or grants of such easements, namely, that where the owner of two tenements sells one of them, or the owner of one entire estate sells a portion thereof, the purchaser takes the tenement or portion sold with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains. *Lampman* v. *Milks,* 21 N. Y. 505; *Seymour* v. *Lewis,* (N. J.) 2 Beas. Ch. 439; Washburn on Easements and Servitude, (4th ed.) 95; *Harwood* v. *Benton,* 32 Vt. 733; *Goodal* v. *Godfrey,* 53 Vt. 219, 38 Am. Rep. 672.

That an underground pipe or conduit, such as a sewer, constitutes a servitude within the meaning of the authorities needs no further elaboration. The distinction between a way or road and an easement for a pipe line or sewer is noted in *Hoffman* v. *Shoemaker, supra.* Its continuous character is determined by the fact that it needs no intervention of other agency to keep it alive, and because in its nature it is continuous.

The grounds of defense interposed to plaintiff's theory of an implied reservation were that the alleged easement was neither apparent nor strictly necessary, so as to entitle plaintiff to continue the servitude upon defendant's property.

We said in *Hoffman* v. *Shoemaker, supra,* page 238, in accordance with the great weight of authority, that "an apparent easement need not be actually visible. It is enough that the facts and circumstances, fairly construed, will disclose it, as in the case of a drain pipe under the surface into which the water is conducted from a roof." In 10 Am. & Eng. Ency. Law, 405, apparent easements are defined as "Those the existence of which appears from the construction or condition of one of the tenements, so as to be capable of being seen or known on inspection." And in *Larsen* v. *Peterson,* 53 N. J. Eq. 88, 30 Atl. 1094, it was said that the mere fact that a drain or aqueduct may be concealed from casual

vision will not prevent it from being apparent in the sense
in which that word is used.

.In the case in hand the general lay of the land, the natural
drainage, all tending from both sides of the sewer to that
point; the knowledge which defendant must have had from
the connections therewith from plaintiff's property, and from
his own and other properties; the absolute necessity for some
drainage and sewerage for the reasonable use of these prop-
erties, we think were sufficient, and must have rendered the
existence of the sewer through his property reasonably ap-
parent, and so as to charge him with notice thereof. The
authorities cited and many that might be cited support this
conclusion.

But was the easement claimed one of strict necessity within
the meaning of the authorities referred to? The rule of strict
necessity has not been uniformly defined by the courts. But
the greater number in weight and reason hold this rule not to
be limited to one of absolute necessity, but to reasonable
necessity, as distinguished from mere convenience. 9 R. C.
L. 765, section 28; *Wells* v. *Garbutt,* 132 N. Y. 430; *Dillman*
v. *Hoffman,* 38 Wis. 559; *Paine* v. *Chandler,* (N. Y.) 19 L.
R. A. 99; *Miller* v. *Hoeschler,* (Wis.) 8 L. R. A. (N. S.) 327,
note III b. 328. In *John Hancock Mut. Life Ins. Co.* v. *Pat-
terson,* 103 Ind. 582, it was decided that if the service im-
posed on one during unity of possession of two parcels was
of a character looking to permanency, and discontinuance of
such service would absolutely involve an actual and substan-
tial re-arrangement of these parts of the estate in whose favor
the service was imposed, to the end that it might be as com-
fortably enjoyed as before, then such necessity would seem
to exist. Our case of *Bennett* v. *Booth,* 70 W. Va. 264, seems
to be in accord with this principle of implied reservation.

A decision well illustrating cases where the rule of reason-
able necessity should not be applied is *Bussmeyer* v. *Jablon-
sky,* (Mo.) Ann. Cas. 1913C 1104. And Jones on Easements,
section 156, says: ''The term 'necessary' is to be understood
as meaning that there could be no other reasonable mode of
enjoying the dominant tenement without this easement.''
And in section 157, the same authority says: ''The degree

of necessity that must exist to give rise to an easement by implied grant, or to an easement by implied reservation, where such an easement is recognized, and no marked distinction is made between a grant and a reservation, is such merely as renders the easement necessary for the convenient and reasonable enjoyment of the property as it existed when the severance was made. 'The degree of necessity is to be determined rather by the permanency, apparent purpose, and adaptability of the disposition made by the owner during the unity of title, than by considering whether a possible use can be made of the parcel granted, after a discontinuance of the right formerly exercised over the other.' The use of the right need not be absolutely necessary to the enjoyment of the thing granted. It is only requisite that the right shall materially affect the value of the thing granted.''

On the trial below it was conceded that plaintiff had no way of drainage or sewerage by way of James Street, or through adjoining lots, and whether it was reasonably possible to get from her lot fronting on James Street by changing the course of the sewer so as to make it run through her hotel lot or in some other way; and whether the sewer through the defendant's lot was so apparent, as to charge defendant with notice thereof, were disputed facts properly submitted to the jury under the evidence, by instructions properly propounding the law of the case, and by the verdict of the jury these facts were found adversely to the contentions of the defendant, and we see no reason for disturbing that verdict or the judgment thereon. The judgment, therefore, will be

*Affirmed.*