WAUBUN BEACH ASSOCIATION *v.* WILSON.

1. EASEMENTS—SUMMER RESORT PROPERTY—RIGHT OF WAY—AD-
   VERSE USER—EVIDENCE.

   In suit to establish easement of passage over lots belonging to
   other lot owners of summer resort property, finding that
   alleged right of way was not established by adverse user or
   prescription *held,* sustained by the evidence.

2. HIGHWAYS AND STREETS—USER—ACCEPTANCE.

   In order to establish trail through the woods as a public highway
   it must not only be traveled upon by the public, but some act
   on the part of the public authorities must be shown from which
   it might be concluded the authorities had taken charge of the
   highway (1 Comp. Laws 1929, § 3936).

3. ACTION—RIGHT OF ACTION—EASEMENTS.

   The rights of respective parties in suit to establish easement of
   passage over lots in summer resort plat are to be determined
   as of date on which suit was commenced by filing of bill of
   complaint since one may not sue first and obtain his cause of
   action afterwards.

4. EQUITY—MOTION TO DISMISS SUIT PREMATURELY BROUGHT.

   A motion to dismiss a bill of complaint on the ground it was
   prematurely filed will lie only where it appears on its face it
   was filed before plaintiff became entitled to enforce his rights.

5. EASEMENTS—CONTINUITY.

   Easements are either continuous or noncontinuous.

6. SAME—CONVEYANCE.

   Apparent and continuous easements pass on the severance of two
   tenements as appurtenant without use of the word ''appurte-
   nances'' but noncontinuous easements do not pass unless the
   grantor uses language in the conveyance sufficient to create
   the easement *de novo* or because its use is absolutely necessary
   to the enjoyment of the premises conveyed.

7. SAME—CONTINUOUS—NONCONTINUOUS—DEFINITIONS.

A continuous easement is one which may be enjoyed without any act upon the part of the party claiming it while a noncontinuous easement is one to the enjoyment of which the act of such party is essential.

8. SAME—RIGHT OF WAY—CONTINUOUSNESS.

Continuousness is not a quality or characteristic of a right of way, such an easement being only a place in which its owner may operate.

9. SAME—IMPLIED GRANT—APPARENT AND CONTINUOUS EASEMENT.

Generally, an easement not of strict necessity will not pass by implied grant unless it be apparent and continuous.

10. SAME—WAY OF NECESSITY.

A way of necessity does not ordinarily exist as an appurtenance, but arises from an implication of law from the principle that where anything is granted the means to attain it are granted and by a grant of ground is granted a way to it.

11. SAME—PERPETUITY—CESSATION OF NECESSITY.

A way of necessity is not a perpetual right and although it may not be extinguished while the necessity continues, it does cease to exist when the necessity for it ceases, such as where a new way to the dominant estate has been provided.

12. SAME—WAY OF NECESSITY—ADVERSE USER.

A way of necessity is based upon an implication of an intended grant and consent to the user while acquisition of a way by adverse user is based upon theory of hostility of use to title of person over whose lands it is acquired, hence, a way of necessity is not based upon continuous adverse user.

13. SAME—NECESSITY—CONVENIENCE.

When a way which has existed as a way of necessity ceases to be necessary it is immaterial that the new way provided is less convenient, too steep, too narrow or more expensive.

14. SAME—EXTENT OF WAY OF NECESSITY.

The extent of the easement created by necessity is limited to the bare necessities of the case.

15. SAME—SELECTION OF WAY OF NECESSITY BY SERVIENT OWNER.

When there are several ways to a land-locked tenement, the owner of the servient tenement can select the way which the land-locked owner shall use provided the way selected be reasonably convenient.

16. Same—Party Against Whom Way of Necessity May be Claimed.

   A way of necessity may be enforced only over the lands of the claimant's grantor.

17. Same—Burden of Proof.

   One claiming way of necessity has burden of establishing that servitude was apparent, continuous and strictly necessary to the enjoyment of his lands.

18. Same—Way of Necessity—New Egress.

   Plaintiff owners of lake front lots in summer resort plat *held*, not entitled to easement of passage over defendants' lots also adjacent to shore where new way has been provided over a bluff to each of plaintiffs' lots.

Appeal from Cheboygan; Bell (Frank A.), J., presiding. Submitted January 8, 1936. (Docket No. 20, Calendar No. 38,462.) Decided March 2, 1936. Rehearing denied April 7, 1936.

Bill by the Waubun Beach Association, a Michigan corporation, and others against Robert L. Wilson and others to establish an easement, restrain the closing of a right of way and for other relief. Decree for plaintiffs. Defendants Theodore R. Mac-Clure and wife appeal. Reversed.

*Shepherd & Berry,* for plaintiffs.

*Hudson & Coates,* for defendants MacClure.

Potter, J. Plaintiffs herein are the owners of land in a summer resort plat known as Waubun beach, on Burt lake, in Cheboygan county, and file a bill against the owners of the lands in the plat other than themselves to establish an easement across the lands of defendants and to restrain the closing of an alleged right of way across the same or from interfering with plaintiffs' use thereof.

Upon the hearing of the case the court found there was no right of way across the premises in question by adverse user or by prescription, a finding sustained by the testimony and from which plaintiffs have not appealed; that the only legal question involved was whether there was a way of necessity. The trial court found as a matter of fact there was no practicable way for any of the property owners to reach their property except by boat or along the trail or claimed easement in controversy here. The trial court held there was a way of necessity for all of the owners of lands in the plat over all of the lots from 1 to 34 thereof. A decree was entered that plaintiffs and defendants, being severally the owners of all the lots in the plat from 1 to 34, have respectively for the purposes of ingress and egress to and over the public highways of the township of Tuscarora, Cheboygan county, a right of way by necessity over, upon and across each and every of the premises of the other parties in said plat from lot 1 to and including lot 34, and immediately adjoining said plat on the north to the township highway at the foot of the bluff, the center line of which was described in the decree; that said right of way was reciprocal between the parties, plaintiffs or defendants, and all parties had the same right of passage for ingress and egress over the respective lots of the other parties thereto. From the decree entered, defendants MacClure appeal.

The lands and premises were wild and uncultivated lands, had been cut over and the timber removed during the period when this territory was lumbered. Someone conceived the idea of platting and selling the lots involved and they were platted. The Waubun Beach Association, one of the plaintiffs herein, is a corporation organized among the

owners of lots in the plat. The road in question claimed to be a right of way or easement was a trail through the woods, never taken over by public authorities or worked or improved and, although it was traveled as occasion required by various people, it did not constitute a public highway.

As pointed out in *South Branch Ranch Co.* v. *Emery,* 191 Mich. 188, the road must not only be traveled upon, but some act on the part of the public authorities must be shown from which it might be concluded the authorities had taken charge of the highway. This is what the legislature had in mind and intended to include in using the words used as such.*

There is no element of public control over the road and we understand it is not claimed the trail in question constituted a public highway. The trial court held there was no right of way across the premises in question by adverse user or by prescription. The sole question is whether there is a way by necessity.

The plat of Waubun beach consists of 54 lots, 60 feet in width, which extend at right angles, or nearly so, to the margin of the lake. Lots 48 to 54 border on the back on a street adjoining the Chippewa beach plat. Appellants are the owners of one-third of the lots in the plat, owning lots 4 and 5, 7 and 8, 35, 36, 37 and 38, and 42 to 51, inclusive, or 18 out of the 54 lots in the plat. There is an old township road along the line between sections 1 and 2 of the township. There was no road extending from the south end of the plat until 1932 when one was opened by the appellants extending across lots 41 to 50 and connecting with the street or roadway on the plat south of that in question. The cottages of those who have built upon the plat are on the compara-

---

* See 1 Comp. Laws 1929, § 3936.—Reporter.

tively flat land extending a short distance back from the shore of the lake. The back part of the lots rises abruptly in a bluff to the higher land farther east. The land in question prior to its having been platted was owned by one E. R. Smith. It was platted in 1914, the plat having been accepted by the township November 16th of that year, and January 4, 1915, was accepted by the proper authorities of the county and recorded in the register of deeds' office of Cheboygan county January 18, 1915.

In the fall of 1931, appellant Theodore R. MacClure concluded he wanted to close this trail across his lots near his residence and gave notice to the other owners of lots in the plat that he was the owner of lots 4, 5, 7 and 8 of Waubun beach, located in the township of Tuscarora, part of lot 1, section 2, a part of lots 1 and 2, section 11, township 35 north of range 3 west. He also advised these owners that he had recently acquired the triangular piece of land situated in the southeast corner of section 2 which lies back of lots 1 to 20, inclusive. He offered to dedicate a strip of land 20 feet in width to extend from the southeasterly line of lot 13 of the subdivision in an easterly direction to the public highway on the easterly line of section 2, to be used as a temporary right of way for the benefit of owners or occupants of lots in the subdivision until such time as a public right of way be provided for highway purposes, not to exceed three years in any event, which right of way should be used only by the owners or occupants of the lots in the subdivision. He also gave them notice that in event the owners of the lots in the subdivision from 13 to 35 might wish a right of way to Chippewa beach road, that being the road lying south of the plat, he was willing to give a right of way 14 feet wide for that pur-

pose over the southeasterly part of lots 35 to 51, inclusive, for a period not to exceed three years, such right of way to be kept as close as practicable to the foot of the hill. He also gave notice that he had made a private road on lots 4 and 5 and lots 7 and 8 from the brow of the hill easterly to the public highway and in the spring would make roads up the hill for private purposes. This notice was dated November 14, 1931, and October 5, 1932, the bill of complaint herein was filed.

There is a road back of lots 4, 5, 7 and 8 on the bluff or hill leading from the appellants' lots on the plat to the highway on the line between sections 1 and 2, which township road the private roads serving these lots, after forming a junction between themselves east of the plat, connect with at a point about directly back of lot 5. There is a road to the south opened in 1932 by the appellant MacClure which extends across lots 41 to 50, inclusive, and connects with the street or roadway south of the plat. There is a road called the Pollard road that goes up the bluff from lot 52 and connects likewise with the street or highway south of the plat.

The decree of the trial court established an easement or right of way of necessity from lot 1 to lot 34 where this so-called easement or private right of way loops around so that parties driving in may turn around and drive out again, and it is this right of way of necessity across the lots of this plat from lot 1 to lot 34 that is involved in this case.

(1) The rights of the respective parties are to be determined as of October 5, 1932, the date upon which suit was commenced by the filing of the bill of complaint herein. 1 C. J. p. 1149; *Hovey* v. *Sebring,* 24 Mich. 232 (9 Am. Rep. 122); *Blackwood* v. *Brown,* 29 Mich. 483; *Moyer* v. *Scott,* 30 Mich. 345;

*Carpenter* v. *Harris,* 51 Mich. 223; *Schwier* v. *Atlas Assurance Co.,* 227 Mich. 104.

"The case is to be tried on the facts as they stood when the suit was brought." *Blackwood* v. *Brown, supra.*

To hold that one may sue first and obtain his cause of action afterwards is to set aside a rule of long standing in this state. *Hovey* v. *Sebring, supra; Moyer* v. *Scott, supra,* and sustained by the weight of authority, 1 R. C. L. p. 340; 1 C. J. p. 1149.

A motion to dismiss a bill of complaint upon the ground it was prematurely filed will lie only where it appears on its face it was filed before the plaintiff became entitled to enforce his rights. *Ladas* v. *Psiharis,* 241 Mich. 101.

(2) Easements are either continuous or noncontinuous. *Morgan* v. *Meuth,* 60 Mich. 238; *Zemon* v. *Netzorg,* 247 Mich. 563; Washburn's Easements and Servitudes (4th Ed.), p. 107; Gale Easements (10th Ed.), p. 30; *O'Rorke* v. *Smith,* 11 R. I. 259 (23 Am. Rep. 440); *Hoffman* v. *Shoemaker,* 69 W. Va. 233 (71 S. E. 198, 34 L. R. A. [N. S.] 632); *Parsons* v. *Johnson,* 68 N. Y. 62 (23 Am. Rep. 149); *Fetters* v. *Humphreys,* 19 N. J. Eq. 471.

"The distinction between easements which are apparent and continuous and those which are not apparent and continuous is well established by adjudicated cases; the former pass on the severance of the two tenements as appurtenant without the use of the word 'appurtenances,' but the latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo.*" 19 C. J. p. 917.

Continuous easements pass on the severance of the two tenements as appurtenant without the use of the word "appurtenances." But noncontinuous

easements do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo*. *Fetters* v. *Humphreys, supra; Parsons* v. *Johnson, supra; Morgan* v. *Meuth, supra; Zemon* v. *Netzorg, supra*.

A continuous easement is one which may be enjoyed without any act upon the part of the party claiming it, such as a waterspout which discharges the water whenever it rains,—or a drain by which surface water is carried over land,—or windows through which light and heat enter. A noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual. *Morgan* v. *Meuth, supra; Zemon* v. *Netzorg, supra; Burling* v. *Leiter,* 272 Mich. 448 (100 A. L. R. 1312).

In *Morgan* v. *Meuth, supra,* it was said:

"This alley was created for a passageway, and nothing else. The only benefit or advantage claimed for it is that of a right of way. It is therefore a discontinuous easement,—one the use of which can only be had by the interference of man. It is not like a drain or sewer, which are used continually without the intervention of man. Continuous easements pass, on the severance of the two tenements, as appurtenances, but a right of way does not, unless the grantor in the conveyance uses language sufficient to create the easement *de novo*, or because its use is absolutely necessary to the enjoyment of the premises conveyed."

In *Zemon* v. *Netzorg, supra,* the language quoted above from *Morgan* v. *Meuth, supra,* was quoted with approval.

In *Hoffman* v. *Shoemaker, supra,* it is said:

"The distinction made is that a continuous easement is one which operates without the interference of man, such as a water-course or drain pipe. A

way is said not to be continuous, because, in the use of it, there is involved the personal action of the owner, in setting his foot upon it or driving his team or cattle upon it. Jones on Easements, §§ 143 to 153, inclusive."

In the same case it is said:

"This quality or characteristic of continuousness does not belong to a right of way. Such an easement is not self-operating. It is only a place in which its owner operates."

In *Burling* v. *Leiter, supra,* it is said:

"The quality or characteristic of continuousness does not belong to a right of way. Such an easement is not self-operating. It is only a place in which its owner operates," citing *Hoffman* v. *Shoemaker, supra.*

The great weight of authority both in England and America is to the effect that an easement not of strict necessity will not pass by implied grant unless it be apparent and continuous. *Zemon* v. *Netzorg, supra; Burling* v. *Leiter, supra.*

(3) A way of necessity does not ordinarily exist as an appurtenance, but arises from an implication of law, from the principle that where anything is granted the means to attain it are granted and by a grant of ground is granted a way to it. Sheppard's Touchstone, p. 89. The rule based upon the authorities is thus stated:

"If land be granted (or excepted) to me; hereby also implicitly (by implication of law) is a way thereunto granted (or excepted) to me also. So that if one have twenty acres of land, and grant me one acre in the midst of it, hereby *inclusive* there is granted to me a way to it. (The rules are applicable only to ways of necessity. In all other cases the usual and accustomed ways pass as easements, &c.)" Sheppard's Touchstone, p. 96.

A way of necessity is just what it purports to be, a way arising by implication of law out of the necessities of the case and which, being based upon necessity, ceases to exist when the necessity for it ceases. It is not a way based upon continuous adverse user. The existence of a right of way by necessity is based upon principles of law which negative the existence of a way by continuous adverse user or the existence of a permanent established way. The acquisition of a way by adverse user is based upon the theory of the hostility of the use to the title of the person over whose lands it is acquired. It recognizes that the owner could have put a stop to its acquisition at any time before it was acquired, but by his laches and acquiescence has slept upon his rights for such a period he may not institute suit by reason of the statute of limitations; a doctrine which has become incorporated in the jurisprudence of this State as a rule of substantive law, while a way of necessity is based upon an implication of an intended grant and the use of it is based entirely upon such implication or consent to its use. The basis of a way by prescription is adverse possession and use and the basis of a way by necessity is the implication of permissive use.

The trial court having found that no easement existed by prescription or adverse user but only a way of necessity, when the necessity ceased the right to the way ceased. This was the holding of Chief Justice Best in *Holmes* v. *Goring,* 2 Bing. 76 (130 Eng. Rep. 233), and was the rule recognized in *Ann Arbor Fruit & Vinegar Co.* v. *Railroad Co.,* 136 Mich. 599 (66 L. R. A. 431), where it was said:

"At that time, and until after November 9, 1886, there was a right to this easement as an easement of necessity. To our mind, it is impossible that one having a right to a way as a way of necessity can

acquire that way by prescription,—at least when, as in this case, his user does not exceed his right. While one has the right to use an easement by the grant of the owner of the servient tenement, that user cannot be adverse. The acquisition of ownership by adverse possession or adverse user necessarily presupposes that the true owner has it in his power to put an end to the adverse holding or adverse user. Manifestly this is not the case when that owner has granted the right to the holding or user in question.''

The right of way being one of strict necessity, if such right exists at all, and not one of mere convenience, it ceases with the necessity. *Whitehouse* v. *Cummings,* 83 Me. 91 (21 Atl. 743, 23 Am. St. Rep. 756), citing *Holmes* v. *Goring, supra; Rumill* v. *Robbins,* 77 Me. 195; *Seeley* v. *Bishop,* 19 Conn. 128; *Viall* v. *Carpenter,* 14 Gray (80 Mass.), 126; *Abbott* v. *Stewartstown,* 47 N. H. 228.

A right of way which exists by necessity is based upon an implied grant and a way of necessity is provisionally brought into existence by the necessities of the estate granted. And if the grantee has a new way to the estate previously reached by the way of necessity, the way of necessity is thereby extinguished. *Oliver* v̇. *Hook,* 47 Md. 301, citing *Pomfret* v. *Ricroft,* 1 Wms. Saund. 321 (85 Eng. Rep. 454), and *Holmes* v. *Goring, supra.*

A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases.

''A right of way of necessity over the lands of a grantor, in favor of a grantee and those subsequently claiming under him, is not, however, a perpetual right of way, but continues only so long as the necessity exists.'' *Palmer* v. *Palmer,* 150 N. Y. 139 (44 N. E. 966, 55 Am. St. Rep. 653), citing *New York Life Ins. & Trust Co.* v. *Milnor,* 1 Barb. Ch.

(N. Y.) 353; *Holmes* v. *Seely,* 19 Wend. (N. Y.) 507; *Simmons* v. *Sines,* 4 Abb. Ct. App. Dec. (N. Y.) 246.

As pointed out in *Alley* v. *Carleton,* 29 Tex. 74 (94 Am. Dec. 260) :

"As this right is implied by the law solely to secure the party in whom it is vested in the enjoyment of his property, of which he would be otherwise deprived, if the necessity for its use cease, the right also ceases."

And in *Pierce* v. *Selleck,* 18 Conn. 321, 328, it is said:

"It is a fallacy to suppose that a right of way of necessity is a permanent right, and the way a permanent way, attached to the land itself, whatever may be its relative condition, and which may be conveyed by deed, irrespective of the continuing necessity of the grantee."

It is undoubtedly true that the way, having been created by the necessity for its use, cannot be extinguished so long as the necessity exists. *Blum* v. *Weston,* 102 Cal. 362 (36 Pac. 778, 41 Am. St. Rep. 188).

"The easement, resulting by operation of law from the fact that the parcel of land he now owns was cut off from the county road by other subdivisions of the original tract, attached to that parcel as an appurtenance, and passed with each successive transfer of title." *Blum* v. *Weston, supra.*

"The necessity, of course, ceases when another way has been acquired, or when, by the acquisition of other lands, the owner can reach the public road without traversing the land of others." *Blum* v. *Weston, supra.*

"A way of necessity arises from necessity alone and continues only while the necessity exists. Un-

questionably appellant had a way of necessity across his grantor's ranch until a road was dedicated to his use, but when that was done his right to a way of necessity ceased, and it matters not that the old road was more convenient for his purposes. When it ceased to be indispensable the right ceased." *Cassin* v. *Cole,* 153 Cal. 677 (96 Pac. 277), citing *Kripp* v. *Curtis,* 71 Cal. 62 (11 Pac. 879); *Carey* v. *Rae,* 58 Cal. 159; and *Blum* v. *Weston, supra.*

This seems to be the general rule.

"While a right of way of necessity continues until some other lawful way has been acquired, and ordinarily cannot be extinguished so long as the necessity continues to exist, nevertheless a way of necessity ceases as soon as the necessity to use it ceases. If the owner of a way of necessity acquires other property of his own over which he may pass, or if a public way is laid out which affords access to his premises, or if a new way is established by a judgment in partition, the right to a way of necessity ceases; and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary." 19 C. J. pp. 953, 954.

"A way created by necessity cannot endure longer than the cause which calls it into being, and is consequently extinguished on the acquisition of another mode of passage, although far less convenient." 9 R. C. L. pp. 815, 816.

(4) This State has never recognized the doctrine that the mere fact that one has to go upgrade in getting to or from his land or that he would have to make or improve a way therefrom, gave him a right to a way of necessity.

No implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted, the foun-

dation of the easement being necessity and not convenience. 19 C. J. pp. 919, 922.

There is a distinction of great importance between easements of necessity and easements which are merely necessary for the reasonable enjoyment of the property granted. 11 Halsbury, Laws of England, p. 252.

The rule of implied reservation is founded upon the mere necessity of the case and the impossibility of admitting that the contract according to the true intention of the parties would be complete without this implication. The extent of the easement thus created by necessity is also limited to the bare necessities of the case. 11 Halsbury, Laws of England, p. 254.

Where there are several ways to a land-locked tenement, the owner of the servient tenement can select the way which the land-locked owner shall use, provided the way selected be reasonably convenient. 11 Halsbury, Laws of England, p. 254.

In *Cooper* v. *Maupin,* 6 Mo. 624 (35 Am. Dec. 456), it is said:

"In *Gayetty* v. *Bethune,* 14 Mass. 49 (7 Am. Dec. 188), the court declared there was no necessity, because the plaintiff could have torn down his brick wall. A proceeding I should suppose as troublesome and expensive as cutting down a bluff."

This case involved a question whether one had a way of necessity over the lands of another because, to pass over his own lands, he would have to improve a road down a bluff along the Missouri river. The proof showed defendant claimed he could make a road down the bluff in two or three months with a team and a couple of hands, and the court held there was no necessity for his passing over the lands of another.

In *Pettingill* v. *Porter,* 8 Allen (90 Mass.), 1 (85 Am. Dec. 671), it was held a way of necessity might exist if the estate was worth $1,000 and the cost of reaching the premises by any other means would be $100,000.

In *Carey* v. *Rae,* 58 Cal. 159, it was held one did not acquire a right of way of necessity because the original right of way was impassable or would cost $1,000 or more to repair.

In *Kripp* v. *Curtis,* 71 Cal. 62 (11 Pac. 879), it is said:

"That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case, and it is only where there is no way through his own land that a grantee can claim a right over that of his grantor."

In *M'Donald* v. *Lindall,* 3 Rawle (Pa.), 492, it is said:

"The right of way from necessity, over the land of another, is always of *strict necessity,* and this necessity must not be created by the party claiming the right of way. It never exists where a man can get to his property through his own land. That a road through his neighbour's would be a better road, more convenient, or less expensive, is not to the purpose; that the passage through his own land is too steep or too narrow does not alter the case. It is only where there is no way through his own land, that the right of way over the land of another can exist."

In *Cooper* v. *Maupin, supra,* it is said:

"It may well be doubted if a man voluntarily takes a conveyance of land, surrounded on all sides by the lands of his grantor and others, he can enforce this right of way under a plea of necessity, against any one but him who conveyed to him. Now in the present case the plaintiff must be held to have voluntarily purchased, knowing the situation of the

estate; and if he had no access to the back part of it but over the lands of another, it was his own folly.''

In *Dodd* v. *Burchell,* 1 Hurl. & Colt. 113 (158 Eng. Rep. 822, 31 L. J. Eq. 364), Chief Baron Pollock observed that to permit the easement or way of necessity would unsettle titles to real property and render them vague, uncertain and unsatisfactory in nature,—and Baron Wilde said:

''It is said that the way now claimed is more convenient than the other. Then comes the question whether the plaintiff can claim it as a way of necessity on account of its great superiority over the other way. It seems to me that it would be most dangerous to hold that where a deed is silent as to any reservation of a way, because it is more convenient to use than another way, it must exist as a way of necessity. There is no foundation whatever for such a doctrine.''

And in *Burling* v. *Leiter, supra,* it is said:

''No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it. Its foundation rests upon necessity, not upon convenience,'' and the court quoted with approval *Dodd* v. *Burchell, supra; Smith* v. *Griffin,* 14 Col. 429 (23 Pac. 905); *Carey* v. *Rae, supra; Kripp* v. *Curtis, supra; M'Donald* v. *Lindall, supra; Cooper* v. *Maupin, supra,* above mentioned.

And the court quoted with approval from *Covell* v. *Bright,* 157 Mich. 419, where it is said:

''To entitle the complainant to a decree the burden was upon him to establish that the servitude was apparent, continuous, and strictly necessary to the enjoyment of his lands. 14 Cyc. p. 1169; *Carbrey* v. *Willis,* 7 Allen (89 Mass.), 364 (83 Am. Dec. 688); *White* v. *Chapin,* 97 Mass. 101; *Crosland* v. *Rogers,*

32 S. C. 130 (10 S. E. 874); *Dolliff* v. *Railroad,* 68 Me. 173; *Butterworth* v. *Crawford,* 46 N. Y. 349 (7 Am. Rep. 352); *Treadwell* v. *Inslee,* 120 N. Y. 458, 465 (24 N. E. 651); *Wells* v. *Garbutt,* 132 N. Y. 430, 435 (30 N. E. 978)."

(5) If plaintiffs ever had a way of necessity upon or over the lands of appellants, such necessity ceased to exist before the filing of the bill October 5, 1932. At that time appellants had not only constructed roads from their lots to the public highway along the section line between sections 1 and 2, but had opened a way across their own premises from lot 35 to the highway, running south of the plat, which was open and used; so that at the time of the filing of the bill of complaint plaintiffs had a right of way to this section line road, as had the owner of lot 6. The owners of lots 1, 2 and 3 had a way to their premises over the lands lying north thereof, and persons owning lands south of those owned by appellants had a way to lot 35, which was established by the trial court, and were given an extension of the right of way for temporary use at least for a period of three years from there to the highway south of the premises by appellants, so that, at the time of the filing of the bill of complaint, all of the parties owning property in the plat had a way to reach their premises without passing over the lands of appellants. Having such way, no right of way of necessity existed over the lands and premises of appellants.

The decree of the trial court is reversed as to appellants, with costs, and a decree will be entered herein in accordance with the findings above.

WIEST, BUTZEL, EDWARD M. SHARPE, and TOY, JJ., concurred with POTTER, J. NORTH, C. J., and FEAD and BUSHNELL, JJ., concurred in the result.