LeRoy *v.* COLLINS.

1. PRESCRIPTION—PRIVATE WAY—ALLEY—EJECTMENT.

Where a private way is improved by the owner and left open for the convenience of others, their use in common with the owners and those for whose special benefit it was opened is, as a rule, to be regarded as permissive only and under an implied license. As to a defendant who claims that his testatrix had exercised adverse user of a strip belonging to an alley that consisted of land taken from both adjoining owners, the use made of that portion taken from property which she did not own must be treated as permissive, not adverse.

2. SAME—ADVERSE USER—EXCLUSIVE POSSESSION NECESSARY.

Defendant could not obtain title to that part of a vacated alley which belonged to adjoining property owners, under evidence of joint user by decedent with the other proprietors, permissive in its inception and not under color of title, since her alleged occupation under a claim of right which they disputed did not become exclusive, and the possession and user by both parties was of the same character.

3. SAME.

Neither occupation in common with the public nor possession concurrent with that of the true owner is ever exclusive.

Error to Kent; Perkins, J. Submitted April 16, 1913. (Docket No. 72.) Decided July 18, 1913.

Ejectment by Simeon LeRoy and another against Hiram Collins as administrator of the estate of Margaret Collins, deceased. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Grove & Davis,* for appellant.

*A. C. Hindman,* for appellees.

STEERE, C. J.   This action of ejectment, brought to recover possession of, and incidentally establish title to, a strip of land 8 feet wide east and west and 55 feet long north and south, immediately adjacent to, and claimed to be a part of, lot 14, block 2, of Coit & Co.'s addition to the city of Grand Rapids, is again before us on a voluminous record which, under previous adjudications of this court, only involves the one question of title by adverse possession.

Coit's addition was platted in 1856, and according to the plat thereof the piece in controversy is the westerly half of that portion of the land adjoining said lot 14 in the rear, laid out as an alley.   Action was taken in 1859 by the common council of the city of Grand Rapids to vacate said alley, and, whether or not said proceedings constitute a legal vacation of the same, it has been held by this court that the action of the common council was sufficient to repudiate and negative any acceptance of dedication tendered by the plat, and the strip, of which the piece in controversy forms a part, did not become a public alley.

This contention has twice before been in this court, the first time in the chancery suit of *Le Roy* v. *Collins*, 154 Mich. 77 (117 N. W. 579), wherein it was held the land in question did not constitute a part of a public alley; and again in *Le Roy* v. *Collins*, 165 Mich. 380 (130 N. W. 635), involving this same ejectment suit, wherein it was held that the question of title had not been in issue between the litigants, nor decided in the chancery suit; that the record title to the same was in plaintiffs, who owned said lot 14, but the question of whether or not they had lost it through adverse possession was yet open and unadjudicated. The lower court having taken the view that the matter was *res judicata,* under the decision in the chancery suit, the case was reversed and remanded for a new trial upon the issue of prescription.

Margaret Collins, the original defendant, died dur-

ing the pendency of this action, and, on suggestion of her death of record, proceedings were continued with her administrator as defendant. The history of the controversy and a sufficient statement of the disputed and undisputed facts involved is found in the two cases cited, and need not be repeated here. At the conclusion of the testimony on a retrial of the case, proceedings were had, which it is not necessary to detail here, resulting in a stipulation presenting, in proper form for review, the action of the court in directing a verdict for plaintiffs. After reviewing the testimony as a whole, the trial court reached the conclusion that defendant had failed to produce any evidence tending to establish his claim of title by prescription, and that there was an absence of such proof of exclusive, open, notorious, hostile, and adverse possession for the statutory period, as is essential to divest plaintiffs of their record title to the fee of the property.

Block 2 of Coit's addition is bounded on the west by Lafayette street, on the north by Hastings street, on the south by Bridge street, and on the east by what is known as the Knapp addition. It consists of twelve full length lots, four of which front south on Bridge street, eight west on Lafayette street with the alley in question lying in their rear to the east, and eight short lots adjacent to the alley on its east side, and abutting on the west Knapp's addition, without any intervening street or alley. The four lots fronting south on Bridge street have an alley running east and west across the addition at their rear, forming an entrance to the north and south alley involved in this controversy, which runs northerly 445 feet through the block to Hastings street. The annexed diagram, introduced in evidence in the case, shows said block 2 as originally platted in 1856, and the relative position of the lots, streets, and alleys mentioned.

Margaret Collins and husband owned the eight short or fractional lots which form the entire eastern boundary of the alley, and her husband, Joel Collins, owns lots 18 and 19 on Bridge street. Lot 15, the most southerly of those facing on Lafayette street, is owned by plaintiff Simeon Le Roy, and lot 14, lying imme-

BLOCK 2 COIT ADDITION

diately to the north and at the rear of which is the piece in dispute, is jointly owned by both plaintiffs.

On the trial of this action 46 witnesses were sworn. Their testimony was necessarily for the purpose of establishing or refuting exclusive adverse possession by Margaret Collins of the strip in question for the statutory period before the commencement of this case. The record title being in plaintiffs, the burden

of establishing title by prescription rests on the defense. It is undisputed that a strip of land 16 feet in width, originally platted as an alley, of which this small piece in dispute forms a part, has been devoted to alley purposes for many years. There are not, and never have been, any buildings upon the same, or other improvements except such as were designed for, and appropriate to, its use as an alley, thoroughfare, way of travel, or means of ingress and egress to and from adjacent property. It has an improved driveway in the center, on the west side of which a few shade trees have been planted, and along its east side, upon the adjoining lots, runs a three-foot cement walk, built by deceased's husband primarily for convenience of occupants of some tenement houses constructed by him upon said lots, there being a two-family flat on lots 1 and 4, which faces north on Hastings street, and nine houses on the east side of the alley facing to the west.

Joel Collins, husband and agent of deceased, became interested in said block 2 as early as 1867, when few, if any, improvements had been made in that locality. He then purchased lots 18 and 19, which he yet owns. In 1873 he secured for deceased lots 8, 9, 12, 13, and 16. In 1885 he purchased from Daniel W. Coit and wife, the then owners, lots 1 and 4, upon which he erected the two-family flat, and at the same time obtained from them a quitclaim deed of the east half of the north end of the platted alley to the depth of 110 feet south from Hastings street, and the west half of said north end south 70 feet, and he later secured by tax title lot 5. At the time he obtained the quitclaim deed of 70 feet of the west half of the north end of the alley the Coits had previously sold the adjacent lots on the west by metes and bounds. The deed from the Coits to deceased in 1873 described the property conveyed as "fractional lots 8, 9, 12, 13, and 16 of block 2 of Coit & Co.'s addition, according

to the recorded plat." The recorded plat showed the alley, although the same was not then a public alley, as already indicated.

When Collins bought lots 18 and 19 the land was broken and rough, so that in its then condition it was not possible to drive through the alley with a load. There was a ravine extending over those lots and to the northwest, along a portion of the alley and across the lots on the west, its deepest portion being on lot 16. Collins built a barn on lot 19 in 1872, and made a driveway along the east side of 19, which connected with the south end of the alley, and gradually improved the alley, working north from lot 19 until he opened a way of travel its entire length and over said lot 19, connecting Hastings and Bridge streets. In 1874 he and his brother had a contract for grading College avenue, in which they had to remove a large amount of dirt, and they used the low parts of the alley and their adjacent lots as a dumping ground; a large amount of dirt being required to fill lot 16. This filling served a double purpose. They had a convenient dumping ground for the dirt required to be moved under their contract, and they also, at the same time, leveled up and improved their lots and the adjacent alley. Collins testifies:

"After we had acquired all of the property on the east side of this property, which is now 'Collins Place' (the name given by him to the property he and wife owned there) * * * we laid out the alley the entire length to Hastings street 20 feet wide from the rear of lots 18 and 19 and built houses on the east side of it; there are more houses than there are lots; the idea was to get all the houses in there we could. * * * I set those poplar trees out about '80, six or seven of them; * * * they were set along that line and kept for shade trees to accommodate my tenants. At the time I commenced the improvements the Keatings lived on lot 6 or 7; then there was no one until you come to about 14—a man by the name of Schmidt lived there; people could not very well get

out of 7, 14, or 15 until I graded it up; most all the wood, coal, and such things were drawn from Lafayette street frontage."

While there is much testimony, more or less conflicting, as to the kind and extent of use made of the alley by the owners and occupants of lots abutting it on the west and fronting on Lafayette street, together with their understanding and claim of right in that connection, in disposing of the question before us we must be governed by the undisputed facts and defendant's testimony taken as true. The conclusion of a witness, however, or a general and sweeping assertion inconsistent with admitted facts, or specific facts testified to by the same witness do not control. Although Collins testified that he had exclusive possession of this alley, his testimony in detail and the admitted facts negative this conclusion.

While an alley at the rear of their property was of interest and value to the owners of lots at the west fronting on Lafayette avenue, their use of and interest in it was relatively small compared with Collins'. The improvement and use of the alley was of vital importance to his project for developing the property on the east, which had no other outlet. He took the burden of improving the alley and did improve it. This was naturally agreeable to all adjacent owners, so long as they were not excluded from it. While the testimony discloses that it was believed by some, if not all, of the abutting owners, other than Collins, to be a public alley, the truth was that he improved and opened this alley on private property, owning but little of it when he began. He never had any title to any of the lots on the west side, or to the piece now in dispute, and no claim to it except that of possession.

According to his own testimony Collins never objected to the use of the alley in connection with the lots on the west side, or to its use by any one who desired, except, as he states it, "they were damaging

something." It was an improved way of travel along lines shown on the plat, was so opened and connected that it furnished a passage from one street to another, and all were free to use it as a thoroughfare, so long as they used it properly and did no damage.

It is undoubtedly the law that where a private way is improved by the owner and left open convenient for others, their use of it in common with the owners and those for whose special benefit it was opened is, as a rule, to be regarded as permissive only, and under an implied license. Conceding this true as to defendant, the rule only applies to land defendant owned. The implied license or permission to use the land on the west half of the alley was from those who owned it, not from him.

Collins shows that he exercised vigilance in insisting on proper use of the way and forbade improper uses, such as throwing rubbish upon it, leaving conveyances standing there overnight, or stable cleanings lying adjacent, and cutting it up in hauling dirt upon an adjoining lot. He did this, as he testified, under a claim of ownership. He admits this claim was denied by certain of the occupants of adjoining property, who insisted on equal rights to use the alley, and continued its use without objection from him, so long as they used it properly. In building the cement walk on the east side, Collins placed it on the line of the alley as designated on the plat, leaving the alley 16 feet wide. He says he knew it so appeared "as a vacant alley" on the plat.

It stands in this case undisputed that no signs or notices were ever put up that this was private property; that defendant never inclosed it; that after it was made passable as a way of travel it always remained open, in general use, free to all who desired to use it and used it properly; the only objections ever made to its use by Collins being to an improper use which damaged something.

All this has materiality only as it bears on defendant's claim to exclusive possession of the eight feet along the rear of lot 14. This lot was partitioned to John Clancy, one of the platters of the property, by deed, before the time of the proceedings to vacate the alley. He sold it in 1872. It was early built upon and occupied. In its natural condition the rear was lower than the front, and coal, wood, etc., were hauled in from Lafayette street. As early as 1878 there was a barn on the back end of the lot. A man named Schmidt bought the lot in 1883 and lived there several years. He filled up the rear of the lot in 1883, making it level with the front and the alley. He used about 600 loads of earth for this filling taken from Hastings street. He used the alley for this purpose, believing it a public alley, and asked permission from no one. As to this Collins testifies:

"Mr. Schmidt never asked me any permission that I know of. I never saw him use the alley in connection with the rear of this lot, except when he moved that dirt. I never told him not to use it."

A man named Hawkins, who purchased the lot from Schmidt, used the alley. He built a fence at the rear, putting a gate in it. When building the fence he proposed to cut down a certain tree standing near the line and Collins forbade it, claiming to own the alley. This Hawkins disputed. They were friendly, Collins says, and he did not forbid him using the alley. Hawkins did not cut the tree but continued to use the alley, hauling over it wood, coal, etc., as he desired, and moved his household goods that way when he left. A tenant on the property named Mohrhardt, using the alley, drove over Collins' walk on the east side and damaged it. Hot words were exchanged, and Collins, asserting ownership, threatened to shut him out from its use. Collins testified Mohrhardt asked permission to use the alley, and Collins said he

had no objection so long as he did no damage. In cross-examination he testifies:

"*Q.* Is it not correct that, when you told him you would shut him out of there, he told you in substance that you could not do it?
"*A.* That was about what took place."

Mohrhardt used the alley after the trouble as before.

After plaintiffs procured the property in May, 1906, being owners and occupants of adjacent property, they had made but little use of the alley, except to take some wagons over it and through the gate to store them in the barn, when defendant proceeded to assert his claim to this eight-foot strip at the rear of their lot by planting a row of small elm trees upon it, one of the trees being directly opposite plaintiffs' barn door and another opposite the middle of their gate, and to build a fence along the east side of the trees, entirely shutting them off from the use of the alley in connection with lot 14. This declaration of war was followed by the chancery suit heretofore referred to, filed on the theory that the strip was part of a public alley, and seeking to restrain defendant from interfering with complainants' use and enjoyment of the same. No claim of ownership or right to exclusive possession of the strip now in dispute was then made by plaintiffs. This court having held that the strip was not a public alley, that title to the same was in the adjacent owners, and that complainants had not sufficiently shown acquisition of an easement in the entire alley by adverse user, their bill was dismissed. Defendant's title and right of possession to the eight feet of the alley on her side of the line having been established, she proceeded, through her husband as agent, to maintain, under claim of ownership by adverse possession, the eight feet on complainants' side, not only cutting them off from the use

of the alley but from possession of the eight feet they had record title to, at the rear of lot 14.

The infirmity in defendant's contention for exclusive adverse possession is it stands undisputed that the only possession she ever had of this eight-foot strip was for improvements as a thoroughfare, and its use as such in connection with others. It was only improved by Joel Collins for that purpose. He had no title to it. The improvements he made and his use of it as an alley were unquestionably permissive, in their inception. He then certainly had no claim of right or color of title to this strip. The alley has ever since been open and used by adjoining owners on both sides and by the public, as occasion demanded, as a thoroughfare and way of ingress and egress. When and how, according to defendant's evidence, did this permissive and concurrent possession become exclusive and adverse? Collins testified to making a claim of ownership, which was denied by adjacent owners and users of the alley; they continuing the use of the alley for the purpose to which it was devoted, as before, under a claim of right on their part.

So far as possession and use are involved, that of plaintiffs and defendant were the same in kind, varying only in degree. Each was only using the other's land for alley purposes. The presumptions as to permissive use apply alike to each party when, without objection, using the land of another in connection with his own for a way of travel. Occupation in common with the public is not exclusive possession, neither is possession concurrent with that of the true owner ever exclusive. *Marble* v. *Price*, 54 Mich. 466 (20 N. W. 531); *Hittinger* v. *Eames*, 121 Mass. 539; 1 Cyc. p. 1025. Defendant's possession is not shown, *prima facie*, to have been hostile in its inception nor exclusive during its continuance. The only evidence in the case from which could be found distinct exclusion of plaintiffs from this eight-foot strip, and a hostile

possession against them is at the time of planting the small elm trees and building the fence in 1906, thus entirely shutting them off from both the use of the alley and the strip in question to which they held the legal title.

We think the trial court correctly held that there was no issue of fact for the jury on the one open question of adverse possession.

The ruling of the court in directing a verdict for plaintiffs is sustained, and the judgment affirmed.

Moore, McAlvay, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.