*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES C. TRUSCON, JR., and KAREN L. ELDEVICK,

UNPUBLISHED
March 17, 2020

Plaintiffs-Appellants/Cross-Appellees,

v

No. 344688
Marquette Circuit Court
LC No. 16-055132-CH

JOHN E. SCHULTZ and CLARA E. SCHULTZ,

Defendants-Appellees/Cross-Appellants.

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Plaintiffs, Charles C. Truscon, Jr. and Karen L. Eldevick, appeal as of right an order denying their motion for a new trial. Defendants, John E. Schultz and Clara E. Schultz, cross-appeal the same order. Plaintiffs challenge the trial court's determination that they failed to establish a superior interest to a disputed strip of land on the basis of acquiescence or adverse possession. Defendants argue that the trial court erred by sua sponte granting certain easements to plaintiffs. We affirm.

## I. BACKGROUND

This matter involves a boundary dispute among the owners of adjacent lots. In 1991, plaintiffs purchased 623 Spruce Street from the Brown family, who had resided in the home throughout the 1980's. William Vercauteren and Gwen Vercauteren lived to the south at 619 Spruce since 1979, until they sold the lot to Thomas Mattioli and Judy DeBoer in 2005, who in turn sold the lot to defendants in 2011. Defendant began renovations on the property in 2015. Among other things, the project involved removing four cedar trees on the northwest side of their lot and replacing the former cement driveway with brick pavers. The new driveway has a wider footprint and extends approximately 1½ feet closer to plaintiffs' property.

At issue in this case is a strip of land located north of the 619 Spruce driveway, as it existed before 2015, and south of the surveyed lot line between the parties' properties (the subject property). The subject property lays entirely within the surveyed boundaries of 619 Spruce.

-1-

Before defendants' renovations, the cedar trees stood on the westernmost portion of the subject property and much of the subject property east of the trees was devoted to gardens maintained by Eldevick. A strip of grass lay between Eldevick's plants and the former 619 Spruce driveway. A window well attached to the south side of plaintiffs' home encroached on the subject property by approximately 1.2 or 1.3 feet. Plaintiffs' roof eaves also encroached by approximately 6 inches. Plaintiffs filed suit against defendants in October 2016, seeking title to the subject property on the basis of acquiescence or adverse possession. Following a bench trial, the trial court determined that plaintiffs demonstrated a case of acquiescence with respect to the area occupied by their window well and granted plaintiffs title to that area, as well as a maintenance easement for the window well and an easement for the location of their roof eaves. With respect to the balance of the subject property, the trial court determined that plaintiffs failed to make out an adequate case of acquiescence or adverse possession. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo actions to determine interests in land that are equitable in nature. *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996). We review the trial court's factual findings for clear error. *Id*. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

## III. ANALYSIS

## A. ACQUIESCENCE

The parties do not challenge the trial court's ruling regarding the portion of the subject property occupied by plaintiffs' encroaching window well, and therefore, our analysis is limited to plaintiffs' claim to the balance of the subject property. Plaintiffs argue that the trial court erred by determining that they failed to demonstrate acquiescence. We disagree.

Statutory acquiescence occurs when adjoining property owners acquiesce to a boundary line and treat that line as the boundary for at least fifteen years. MCL 600.5801(4); *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). The person claiming ownership over real property has the burden of proving acquiescence by a preponderance of the evidence. *Id*. Although there is not an explicit set of elements necessary to establish acquiescence, the key inquiry is whether the evidence, when viewed as a whole rather than examining various occurrences in isolation, establishes that the parties treated a particular boundary line as the property line. *Walters v Snyder*, 239 Mich App 453, 457-458; 608 NW2d 97 (2000).

Plaintiffs first argue that the trial court erred by beginning its analysis in 1991, when plaintiffs acquired 623 Spruce, despite the unrebutted evidence presented at trial that the Brown family, their predecessors in title, planted the cedar trees in 1981 or 1982, and maintained the subject property. The "acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*, 244 Mich App at 260. Any error arising from the trial court's failure to consider the time frame before 1991 is harmless because the trial court properly found that the parties *and* their predecessors in title were

inconsistent in their opinions and patterns of use of the subject property, and that this inconsistency was fatal to plaintiffs' claim.

Viewing the evidence as a whole, plaintiffs failed to demonstrate acquiescence to a different boundary line. *Walters*, 239 Mich App 458. There was no express agreement as to the location of the boundary line, nor do the residents' actions demonstrate that they consistently recognized or respected an alternative boundary line. *Sackett*, 217 Mich App at 677-679; *Walters*, 239 Mich App at 459-460. The residents mutually used the subject property throughout the years, without concern for the location of the actual boundary. Only Gwen Vercauteren testified that she believed plaintiffs owned the subject property. William Vercauteren was unsure where the boundary was located, but reasoned that it was probably "split in some fashion." Mattioli believed the boundary ran in a straight line from the parties' garages to Spruce Street. DeBoer thought that the lattice fence marked the boundary line. William, Mattioli, and DeBoer did yard work on the subject property over the years and did not otherwise treat the subject property as belonging to plaintiffs. The joint use of adjoining property by neighbors who once were friendly and cooperative does not support a claim of acquiescence. *Aalsburg v Cashion*, 384 Mich 236, 243; 180 NW2d 792 (1970).

Plaintiffs also argue that the trial court erred by considering the former 619 Spruce residents' opinions regarding where the boundary line was located. Plaintiffs contend that opinions that were never communicated to them are not relevant to refute their acquiescence claim. We disagree.

Under the theory of acquiescence, the relevant inquiry is whether the parties *treated* a particular boundary line as the property line, and therefore, the focus is on the parties' conduct, not their actual knowledge or subjective beliefs. *Walters*, 239 Mich App at 458. However, an unexpressed personal belief is not irrelevant to this inquiry because subjective belief gives context to a party's conduct. See, e.g., *id*. at 459-460 (considering the plaintiff's personal belief regarding the disputed property line); *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993) (considering the parties' actual knowledge regarding the disputed property line).

Next, plaintiffs argue that the trial court erred by rejecting their alternative acquiescence theory premised on the historical intent to deed to a marked boundary at the time the legal description for 623 Spruce was created. We disagree.

Acquiescence by intention to deed to a marked boundary does not merely require a marked boundary inconsistent with some other boundary; it arises from a grantor's intention to describe in the deed the boundary marked on the ground by a common grantor. *Daley v Gruber*, 361 Mich 358, 363; 104 NW2d 807 (1960).

Plaintiffs argue that historical documents presented at trial demonstrated that the person who first established the Hewitt addition plat intended that the 623 Spruce lot be larger than the 50-foot wide lot described in the deeds for the property. A 1928 warranty deed given to Kate Mitchell—the then-current resident of 623 Spruce—stated that the deed was given for the purpose of confirming her title to the premises that she already occupied. The 1928 deed was the first instrument to use the legal description referring to a 50-foot wide lot. Plaintiffs also presented a Sanborn map from 1917 that depicted a house with the same footprint as the existing structure and

a much larger lot than recent surveys reflected. The 1917 Sanborn map showed a substantial distance between the dwelling on 623 Spruce and the line separating 623 Spruce from 619 Spruce.

This theory of acquiescence arises only when a common grantor marked a boundary on the land, but mistakenly conveyed property inconsistently with the marked boundary. *Daley*, 361 Mich at 363. Because plaintiffs' claim of error does not involve an inconsistency between the original legal description and physical monuments placed to designate the boundary line, this theory of acquiescence cannot be applied to the circumstances at hand. Moreover, even if plaintiffs' argument fit within the legal framework for this type of acquiescence, professional surveyor Glenn Van Neste explained that Sanborn maps are created to show the relative location of nearby structures for purposes of fire insurance and do not depict actual property lines. Thus, the trial court did not clearly err by finding that the 1917 Sanborn map was insufficient evidence of an intention to create a boundary that differed from the legal lot line.

## B. ADVERSE POSSESSION

Plaintiffs next argue that the trial court erred by denying their adverse possession claim. We disagree.

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period for an adverse possession claim is 15 years. MCL 600.5801(4); *Canjar v Cole*, 283 Mich App 723, 731; 770 NW2d 449 (2009). The trial court determined that plaintiffs had not demonstrated superior title to the subject property by way of adverse possession because they failed to establish the exclusivity requirement in light of the joint and cooperative use of the subject property by the residents of 619 and 623 Spruce.

The necessary degree of exclusivity varies depending on the character of the property at issue. *Jonkers v Summit Twp*, 278 Mich App 263, 274-275; 747 NW2d 901 (2008). As a general rule, possession is not exclusive when shared with the public at large or the true owner. *Id*. at 274, citing *Le Roy v Collins*, 176 Mich 465, 475; 142 NW 842 (1913); Plaintiffs focus on the exclusive maintenance of the cedar trees by themselves and the Browns, and ignore the multiple examples of mutual use discussed above. *W Michigan Dock & Mkt Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995) (mutual use or occupation of property with the owner's permission is insufficient to establish adverse possession).

Plaintiffs take issue with the trial court's reliance on the placement of the lattice fence as evidence negating the exclusivity requirement. Regardless of who built the fence or the purpose intended to be served by its location, the position of the fence suggested that plaintiffs did not exclude their neighbors from the subject property. Instead, they silently permitted a fence to stand in a location that left the subject property entirely open to the 619 Spruce residents while simultaneously hampering plaintiffs' own direct access, which was already limited by the location of a wrought iron fence that stood in plaintiffs' front yard, just north of the subject property. Thus, the trial court did not err by giving weight to the location of the fence.

Plaintiffs also challenge the trial court's interpretation of a statement made by Truscon during his deposition. According to the deposition transcript, Truscon stated, "There was a general agreement with the prior owners that we mutually used that strip of lane." At trial, Truscon denied the existence of any such agreement regarding the subject property and explained that he was referring to the 619 Spruce driveway when he used the word "lane." The trial court rejected Truscon's explanation for two reasons. First, having reviewed the video recording of Truscon's deposition, it was evident that he said "strip of *land*." Second, the trial court determined that the context of Truscon's statement made a purported reference to the driveway illogical because Truscon was discussing an area where plants and vegetables were grown. The trial court's interpretation of Truscon's statement was well-reasoned, and to the extent it involved a credibility determination, the trial court is entitled to deference on appeal. *Elahham v Al-Jabban*, 319 Mich App 112, 126; 899 NW2d 768 (2017). We are not left with a definite and firm conviction that the trial court erred in this regard, and Truscon's admission was highly relevant to plaintiffs' claim because permissive use cannot support a claim of adverse possession. *Kipka*, 198 Mich App 438. See also *Ruggles v Dandison*, 284 Mich 338, 342; 279 NW 851 (1938) (peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession).

We conclude that under the circumstances presented in this case, the trial court correctly concluded that plaintiffs cannot establish the exclusivity requirement necessary to maintain their claim of adverse possession. *Le Roy*, 176 Mich at 475 (shared use with the true owner of a disputed property does not establish the exclusivity requirement).

## C. EASEMENTS

On cross-appeal, defendants argue that the trial court erred by granting easements in favor of plaintiffs because plaintiffs' complaint did not allege the need for an easement, describe the property as to which plaintiffs sought an easement, or set forth facts showing the superiority of their interest as required by MCR 3.411(B). We disagree.

MCR 3.411(B) governs the complaint in actions to determine an interest in land and provides as follows:

(1) The complaint must describe the land in question with reasonable certainty by stating

(a) the section, township, and range of the premises;

(b) the number of the block and lot of the premises; or

(c) another description of the premises sufficiently clear so that the premises may be identified.

(2) The complaint must allege

(a) the interest the plaintiff claims in the premises;

(b) the interest the defendant claims in the premises; and

(c) the facts establishing the superiority of the plaintiff's claim.

In their complaint, plaintiffs identified the parties' properties by legal description and identified the property at issue in the case as the property situated between the surveyed boundary line and the north side of defendants' driveway, as it existed before it was renovated.[1] The easements at issue fall within the area of the subject property. Plaintiffs sought to quiet title to the subject property in their favor, alleging a superior interest in the property on the basis of adverse possession or acquiescence. Thus, the complaint satisfied the requirements set forth in MCR 3.411(B).

Defendants take issue with plaintiffs' failure to specifically request the easements they received. However, MCR 3.411(B) contains no requirement that a plaintiff allege entitlement to the precise form of relief that is ultimately granted. Indeed, such a requirement would be contrary to MCR 2.601(A), which provides that "every final judgment may grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded that relief in his or her pleadings*." (Emphasis added.)

Defendants rely on caselaw limiting a plaintiff's ability to amend a complaint to add new claims at a late stage in the proceedings when the amendment would prejudice the defendant. See, e.g., *Weymers v Khera*, 454 Mich 639; 563 NW2d 647 (1997) (affirming denial of motion to amend complaint to add claim for pulmonary injury where complaint alleged kidney injury and the defendant did not have reasonable notice of the pulmonary claim before the eve of trial). Defendants' argument is misplaced because the easements granted by the trial court did not require amendment of the complaint. Although it is true that "[a] trial court does not have authority to grant relief based on a claim that was never pleaded in a complaint or requested at any time before or during trial," *Reid v Michigan*, 239 Mich App 621, 630; 609 NW2d 215 (2000), relief on the basis of an unpleaded claim is distinguishable from granting different or additional relief on the basis of a claim that is properly before the court, *Weymers*, 454 Mich at 663-664.

It is well-settled that trial courts are not bound by the remedies sought by the claimant in actions that are equitable in nature. *Madugula v Taub*, 496 Mich 685, 711; 853 NW2d 75 (2014). Instead, "the court has broad power to fashion relief as the circumstances require . . . ." *Id*. at 712. "[O]nce a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy." *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997) (quotation marks and citation omitted). Thus, a trial court is free to grant relief that is germane to the issues presented by the pleadings, even when the relief it orders is not specifically requested. *Swan v Ispas*, 325 Mich 39, 45; 37 NW2d 704 (1949). Accordingly, the trial court was free to exercise its equitable discretion to fashion appropriate relief.

IV. CONCLUSION

---

[1] Plaintiffs later clarified that the subject property was limited to the area east of the parties' garages.

The trial court did not err by finding that plaintiffs failed to establish a superior interest to the subject property on the basis of acquiescence or adverse possession.  Nor did the trial court err by granting easements to plaintiffs.  Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford