*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACATAWA PARK ASSOCIATION, JOHN
GRONBERG, and JOEL KRISSOFF,

UNPUBLISHED
April 13, 2026
10:53 AM

Plaintiffs-Appellants,

v

No. 369641
Ottawa Circuit Court
LC No. 22-006731-CH

VA PROPERTIES, LLC, DAVID VAN ANDEL,
Trustee of the DAVID VAN ANDEL TRUST, and
CAROL E. VAN ANDEL, Trustee of the CAROL E.
VAN ANDEL TRUST,

Defendants-Appellees.

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Plaintiffs, the Macatawa Park Association (MPA),[1] John Gronberg, and Joel Krissoff appeal as of right the trial court's final judgment for defendants, VA Properties, LLC, and David and Carol Van Andel in their capacity as trustees for their respective trusts. Plaintiffs argue that the trial court erred by granting partial summary disposition in favor of defendants and holding that plaintiffs had not established that they had a right to use private paths running through defendants' properties. Plaintiffs Gronberg and Krissoff also argue that they had personally established prescriptive easements over the paths. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises from a property dispute involving several rights of way in the land north of Macatawa Park, a summer resort community located on a peninsula between Lake Michigan and Lake Macatawa. In particular, plaintiffs claim that they have a right to use the private rights

---

[1] Plaintiffs substituted former plaintiff the Macatawa Park Cottagers Association (MPCA) for MPA after MPCA merged into MPA and ceased to exist.

of way known as Bay Road, North Walk, and Lakeside Way (collectively, the Paths), which are owned in whole or in part by defendants.

There are two main roads or walkways on the peninsula—Lakeside Road on the west side and Bay Road on the east side. They are connected by Interlake Walk. In 1985, the District Court for the Western District of Michigan entered an order vacating the section of Lakeside Road that extended into Heneveld's Supervisor's Plat No. 31 (HS31).[2] The order established an alternate route, which was replatted as Lakeside Way. On the other side of the peninsula, the northernmost part of Bay Road leads to North Walk, which connects to a dock along the water's edge. North Walk begins as a cemented path before turning to gravel and continuing west toward a lighthouse on the far northwestern corner of the peninsula. The gravel part of the path is owned by the United States.

The northernmost part of the peninsula where this gravel path is located came to be owned by the United States government in 1873. On August 8, 1873, property owners Henry and Anna Post conveyed a parcel of land abutting the Macatawa Channel to the United States to operate as a lifesaving station. On April 23, 1884, the United States was granted an additional parcel of land for the lifesaving station. The lifesaving station operated until about 1955.

The peninsula was first platted on May 16, 1888, creating Macatawa Park. The northern part of the peninsula was platted as part of Ottawa County, but the plat did not encompass the northernmost region of the peninsula along the Macatawa Channel, including the government's property. The southern part of the peninsula was platted as part of Allegan County. Over the next couple decades, additional lands below the peninsula were platted as "additions" to Macatawa Park. These included the 1890 Lakeside Addition, the 1895 Chicago Addition, and the 1909 Macatawa Bay Addition. The only express dedication relating to the use of roadways in Macatawa Park comes from the 1909 Macatawa Bay Addition plat, which dedicated the roads therein "to the sole and only use of the lot owners."

The northern region of the peninsula was not platted until April 19, 1935, in HS31. Later that year on August 10, 1935, Heneveld resubdivided land in the 1888 Macatawa Park plat. This version clearly showed Bay Road and Lakeside Road running to the southern border of HS31. When the 1985 court order vacated the northern end of Lakeside Road and created Lakeside Way, that area of HS31 was amended in 1986. That amended plat reflected that the northernmost part of Lakeside Road was vacated, and Lakeside Way split off from Lakeside Road at a 45-degree angle in a northwest direction. The disputed Paths in this case—Lakeside Way, North Walk, and the path connecting Bay Road to North Walk—are all located within HS31, as amended.

In 1943, our Supreme Court recognized that Macatawa property owners had an easement allowing them to use the private roads, streets, drives, alleys, and parks in Macatawa Park to access their properties. *Unverzagt v Miller*, 306 Mich 260, 262; 10 NW2d 849 (1943). This easement also allowed property owners to invite merchants and tradesmen to deliver groceries, milk, ice,

---

[2] *Van Andel v Park Twp*, unpublished order of the United States District Court of the Western District of Michigan, entered July 16, 1985 (Case No. G-80-240 CA 6).

and other goods "reasonably necessary and convenient to the proper enjoyment of the easement." *Id*. at 266.

Plaintiffs alleged that defendants installed a temporary fence in 2015 to block the north end of Lakeside Way while they were constructing a new residence. After construction was completed, defendants refused to remove the fencing, and they also maintained a wall that blocked anyone from using Lakeside Way. Plaintiffs' complaints regarding Bay Road and North Walk began in 2021. Before the COVID-19 pandemic, plaintiff MPCA, the Holland Harbor Lighthouse Historical Commission, and defendant VA Properties entered into an agreement to limit access to the lighthouse to Tuesdays and Thursdays. In the spring of 2020, the parties agreed to suspend the agreement and prevent access to the lighthouse because of concerns regarding high water levels and COVID-19 exposure. By the summer of 2021, however, VA Properties had not restored access. It maintained a guardhouse on Bay Road, and plaintiffs alleged that security personnel would physically confront and turn away anyone who tried to pass by the guardhouse heading toward North Walk. VA Properties also installed a red sawhorse barricade with a "No Trespassing" sign at the west end of North Walk.

MPCA (now MPA)—a nonprofit corporation formed to protect and serve the interests of cottage owners in Macatawa Park—as well as Gronberg and Krissoff, who were MPCA members and owned property south of HS31, brought this action as plaintiffs against defendants. Their complaint alleged, among other things, that plaintiffs were entitled to declaratory judgment that an easement granted all property owners in Macatawa Park a right to the recreational use of the Paths even if their property was south of HS31, and that plaintiffs Gronberg and Krissoff had each established a prescriptive easement for recreational use of the Paths. Plaintiffs later amended the complaint to add an alternative claim that the Macatawa Park property owners' rights stemmed from a common-law private dedication of the rights of way within HS31 for the use of lot owners in plats south of HS31.

On September 21, 2022, plaintiffs moved for summary disposition under MCR 2.116(C)(10) on the issues of declaratory judgment and common-law private dedication. Regarding the request for declaratory judgment, plaintiffs asserted that the original Macatawa Park developers envisioned the land within all the aforementioned plats—including HS31—as a single summer resort, and that understanding of the land had continued for the last 150 years. Operating under this "one resort" theory, plaintiffs contended that the easement recognized in *Unverzagt* applied to all private rights of way on the peninsula, and all property owners on the peninsula could use all rights of way, even if they were not required to access their particular properties. Plaintiff's common-law private-dedication argument also stemmed from the "one resort" theory. The fact that the various plats were only accessible by interconnected private roads and walkways indicated, according to plaintiffs, that "the dedicators intended the streets, walks, and ways of Macatawa Park to be used as rights of way where such use is necessary for property owners within Macatawa Park, including Defendants, to access their property and the amenities within Macatawa Park."

To support this theory, plaintiff presented many historical sources, including four books written by historians about Macatawa Park's history, which allegedly refer to the Macatawa Park resort as extending north all the way to the Macatawa Channel. Plaintiffs also presented an 1876 atlas allegedly owned by Henry Post, the original owner of the government's property. Within the atlas was a flyer, supposedly from 1891, which advertised cottages in Macatawa Park,

stating: "The United States Life Saving Station and Light House are located at the Park, upon lands donated to the Government by the [Macatawa Park] Association. The drills of the crew at the Station are enjoyed by visitors."

Defendants disagreed with plaintiff's "one resort" theory, arguing that the land within HS31 had a much different history than the rest of the Macatawa Park summer resort because of its use as a military lifesaving station, as well as the fact that HS31 was platted much later than the other plats and was never officially labeled as part of Macatawa Park.

The trial court denied plaintiffs' motion for partial summary disposition, emphasizing that it could not infer the existence or nonexistence of an easement from the platting documents or plaintiffs' historical sources because they did not reflect the intent of the actual owners of the property. The court placed greater weight in Post's deed conveying the northern region of the peninsula to the United States while clearly excluding other property that later formed the Macatawa Park plat. Regarding plaintiffs' claim of a common-law private dedication, the trial court found that plaintiffs had not provided any direct evidence that the owner of any of the Paths or the surrounding property had intended to dedicate the roads and walkways to Macatawa Park residents. The trial court refused to infer such intent from plaintiffs' "secondhand evidence" or the mere fact that the roads and walkways were interconnected and stretched across multiple plats.

About a month later, defendants moved for partial summary disposition under MCR 2.116(C)(10) on the same issues, arguing that they were now entitled to judgment as a matter of law because discovery had closed and plaintiffs had not produced any additional evidence since the trial court denied their earlier motion for summary disposition. In response, plaintiffs produced a mountain of evidence, including new historical documents and trial testimony from *Van Wieren v Macatawa Resort Co*, 235 Mich 606; 209 NW 825 (1926), which allegedly showed that people considered Macatawa Park to extend into the northern region of the peninsula, including the lifesaving station and the lighthouse. This evidence, according to plaintiffs, established that people would use the northern roads, especially Bay Road and North Walk, to travel from the southern part of the peninsula to the lighthouse.

The trial court again rejected plaintiffs' "one resort" theory on the basis that plaintiffs' new evidence did not create a factual dispute regarding whether the developers intended HS31 to be part of a single Macatawa Park. It gave little weight to plaintiffs' evidence because the evidence conflicted with actual legal documents, specifically Post's conveyance to the United States and the platting documents that acknowledged the land as separate regions. The trial court found that plaintiffs had produced no new evidence of an express easement, so reasonable minds could not differ on that issue. As for whether an implied easement existed, the trial court found that the testimony from the *Van Wieren* case did not suggest that a permanent and obvious servitude was imposed during unity of title, i.e., before the 1888 Macatawa Park plat was recorded. Regarding a common-law dedication, the trial court held that "plaintiffs' response does not present any new evidence to identify a clear and specific action by an identifiable source that amounts to an expression of grantor intent." The trial court ultimately granted defendants' motion for summary disposition on plaintiffs' claims of declaratory judgment and common-law private dedication.

The only issue remaining for the three-day bench trial was whether plaintiffs Krissoff and Gronberg had each established a prescriptive easement over the Paths. Plaintiff Krissoff testified

-4-

that he and his family had a vacation cottage built in Macatawa Park in 1974, which they converted to their permanent residence in 2014. He claimed that he used the Paths frequently from 1974 until defendants blocked them. Plaintiff Gronberg testified that his parents bought their first property in Macatawa Park in 1949, and he acquired the property from them in 1989. Gronberg averred that, as a child, he would ride his bike and walk on the Paths, and his parents also "regularly" used the Paths. Gronberg further testified that, after acquiring the property in 1989, he took recreational walks through the Paths to see the lighthouse. Both plaintiffs testified that they never asked for or received permission to use the Paths and that they were never prevented from using the Paths until the events giving rise to this case.

Despite Krissoff's and Gronberg's testimony, the trial court held that permission to use the Paths was implied because "the near absence of any confrontations with defendants' security personnel" was "circumstantial evidence that defendants either tolerated [Krissoff's and Gronberg's] occasional uses of the walks and ways . . . or that plaintiffs' uses were not as regular and frequent as they recollected (or both)." The court accordingly concluded that plaintiffs had not proven by clear and cogent evidence that their use was adverse and hostile to defendants' interests. The trial court dismissed plaintiffs' claims, and this appeal followed.

## II. PARTIAL SUMMARY DISPOSITION

Plaintiffs first argue that the trial court erred when it granted summary disposition for defendants on the issues of whether an easement or common-law private dedication granted all property owners within Macatawa Park the right to the recreational use of the Paths. We disagree.

## A. STANDARD OF REVIEW

A grant or denial of a motion for summary disposition is reviewed do novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendants moved for summary disposition under MCR 2.116(C)(10). Summary disposition is proper under this subrule if there are "no genuine issues as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A genuine issue of material fact exists if the record "leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a (C)(10) motion, the reviewing court must consider the entire record "in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 118, 120.

## B. THE *UNVERZAGT* EASEMENT

Contrary to plaintiffs' assertions, *Unverzagt* does not encompass their purported right to use the Paths.

In *Unverzagt*, 306 Mich at 262, owners of cottages in Macatawa Park sued Georgie E. Miller, the then-owner of the rights of way in Macatawa Park, alleging that their preexisting easement for the use of defendant's roads for ingress and egress from their cottages also allowed them to invite people to use the roads to deliver groceries, ice, milk, and other goods to their cottages. The plaintiffs did not claim that the rights of way should be open to the public, only that the defendant had no right to refuse passage to deliverymen invited by the cottagers. *Id*. at 264. Our Supreme Court held that "[t]he use exercised by the holders of the easement must be

reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land." *Id*. at 265. The use of delivery services fell within the scope of that easement. *Id*. at 266.

In rendering its decision, our Supreme Court incorporated by reference "the history and growth of the development of Macatawa Park" from *Weihe v Macatawa Resort Co*, 198 Mich 334, 337; 164 NW 510 (1917), which only mentioned the original 1888 Macatawa Park plat. *Unverzagt*, 306 Mich at 263. The *Unverzagt* Court's final order likewise only mentions the original 1888 Macatawa Park plat.[3]

Because the *Unverzagt* Court's order refers only to the 1888 plat and the opinion adopts the history of *Weihe* (which likewise only refers to the 1888 plat), we cannot infer that the *Unverzagt* easement contemplated the property rights in HS31. We also fail to see how the easement would allow for the recreational foot traffic that plaintiffs seek because it is not apparent that that use is "reasonably necessary for the use and enjoyment of the easement." *Unverzagt*, 306 Mich at 266. Our Supreme Court's expansion of the easement to include the cottagers' delivery services was an extremely narrow holding justified by the particular circumstances of that case. *Id*. In *Unverzagt*, the defendant's ban on outside delivery services meant that "the cottage owners were either compelled to bring in their own goods and supplies, or submit to defendant's requirement that deliveries be made only at the store owned by defendant (then used mainly for storage purposes), to be later delivered to the cottages by the defendant." *Id*. at 265. The delivery of essential groceries was necessary to the enjoyment of the easement because there is little value in possessing the right of ingress and egress from a house with no food. In this case, defendants' refusal to allow recreational walks on their properties would not undermine the purpose of an easement granted only for ingress and egress. Therefore, *Unverzagt* does not apply to this case.

## C. IMPLIED EASEMENT

Plaintiffs' claim of an implied easement[4] through their "one resort" theory fails as a matter of law.

"An easement represents the right to use another's land for a specified purpose." *Plymouth Canton Comm Crier, Inc v Prose*, 242 Mich App 676, 678; 619 NW2d 725 (2000). An implied easement may arise by necessity or by quasi-easement. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 41; 840 NW2d 775 (2013). An easement by necessity requires that one parcel is landlocked and accessible only through the disputed property. *Id*. at 41-42. An easement by necessity is not possible in this case because cottages south of HS31 are accessible through roads and walkways south of HS31, and cottagers within HS31 already have an easement for that purpose. This case only concerns the existence of a quasi-easement.

---

[3] *Unverzagt v Miller*, unpublished order of the Supreme Court, issued January 7, 1944 (Docket No. 42388), pp 1, 3.

[4] Plaintiffs have not challenged the trial court's holding that no express easement provided them rights to the recreational use of the Paths, so we do not reach that issue.

An easement implied from a quasi-easement requires three elements: "(1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits." *Id*. at 42 (quotation marks and citation omitted). Plaintiffs failed to establish the first and second elements.

The first element fails because plaintiffs did not provide any evidence that the Paths were ever under common ownership with property south of HS31. When it denied plaintiffs' motion for summary disposition, the trial court noted that "[i]t may be useful to review the title histories of those parcels north of the north boundary of the Macatawa Park plat—particularly those which adjoin Lakeside Way, Bay Road, and North Walk," but plaintiffs had not produced such evidence by the time that the trial court granted summary disposition for defendants. Without this evidence, plaintiffs failed to prove a unity of title.

The second element is "continuity." *Id*. "A continuous easement is one which may be enjoyed without any act upon the part of the party claiming it," while "[a] noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual." *Waubun Beach Ass'n v Wilson*, 274 Mich 598, 606; 265 NW 474 (1936). In *Waubun Beach*, the Waubun Beach Association, a corporation consisting of owners of lots in a lakeside summer-resort plat, claimed an easement over a trail through the woods on land located in a different plat. *Id*. at 600-602. The trail "was traveled as occasion required by various people," but it was not a public highway. *Id*. at 602. The resort lot owners may have held an easement by necessity years ago, but by the time they claimed an easement over the trail, they had developed other ways to reach their properties. *Id*. at 615. Our Supreme Court refused to recognize an easement in this situation, noting that an easement for the use of a right of way is not continuous because it requires the easement holder to take a specific act to use the easement—he must physically walk or drive on the land. *Id*. at 606-607.

The limited framework of a quasi-easement can therefore not support plaintiff's argument that anyone who will ever own a lot in Macatawa has a right to use the Paths. Rights of way are for the enjoyment of people, not properties. With or without a recreational easement, the cottages would remain the same. Because this remedy is not available for the kind of rights that plaintiffs seek, plaintiffs' implied easement claim fails as a matter of law, and we need not address the third element an implied easement.

## D. COMMON-LAW PRIVATE DEDICATION

Plaintiffs argue in the alternative that the Macatawa developers created an easement over the Paths through a common-law private dedication. We disagree.

Private dedications were first statutorily recognized in 1925, but private dedications expressed in plats recorded before 1925 are still enforceable. *Redmond v Van Buren Co*, 293 Mich App 344, 354; 819 NW2d 912 (2011). If the dedication does not appear in a recorded plat, then it is a common-law private dedication and subject to virtually the same requirements as a common-law public dedication. *Id*. at 356. *Redmond* summarized those requirements as follows:

A valid common-law dedication of land to the public requires the following elements: (1) an intent of the owners of property to offer the property to the public for use, (2) acceptance of the owners' offer by public officials and maintenance of the property by public officials, and (3) use of the property by the public generally. [*Id*. at 353 (quotation marks and citations omitted).]

With respect to the first element, there need not be an explicit grant "nor written words," and instead, when determining whether an "intention to dedicate" exists, "all facts and circumstances bearing on the question are considered." *Id*. (quotation marks and citations omitted). "[D]edications have been established in every conceivable way by which the intention of the dedicator could be evinced." *Id*. at 355 (quotation marks and citation omitted).

In *Redmond*, the plaintiffs sought an easement to access their properties in Syndicate Park through a road on the defendant's "Lots 1-4," which the defendant blocked with a locked gate. *Id*. at 346. Back in 1956, Dwight and Alice Porter, the previous owners of Lots 1-4, conveyed them to the Sand Haven Voluntary Association, but that conveyance failed because the Association was not a legal entity. *Id*. at 347, 356. Nevertheless, members of the Association all had keys to the gate on the lots, and there was a "common understanding" that Association members could use the roads there. *Id*. at 348. Over the years, the members received new keys or access codes whenever the locks changed. *Id.* at 348-349. This Court concluded that the failed conveyance alone was enough to establish the owners' intent to create a private dedication, and other evidence established the acceptance, maintenance, and use of the easement:

> The Porters' deed to the Sand Haven Voluntary Association demonstrates that the Porters intended to dedicate Lots 1-4 for private use. Moreover, the evidence at trial established that private individuals in Syndicate Park accepted, maintained, and used Lots 1-4. The inscription of "1950" on the cement footing of the gate on Lots 1-4 indicates that the gate and the private drives on Lots 1-4 were used by private individuals in Syndicate Park before the Porters' failed conveyance in 1956. Palmer, the earliest resident of Syndicate Park to testify in this case, testified that the gate and private drives on Lots 1-4 were present when he purchased his property in 1971. Hemmeter testified that he maintained the drives after purchasing property in Syndicate Park in 1988. And, there was testimony that the old and new gates on Lots 1-4 were maintained by private individuals in Syndicate Park. Accordingly, we conclude that the trial court did not err when it found that the Porters' failed conveyance to the Sand Haven Voluntary Association created an irrevocable easement in Lots 1-4 of Block 21 by virtue of a private dedication. [*Id*. at 356-357.]

This Court then rejected an argument that the *scope* of the dedication was controlled by the deed of the failed conveyance alone, explaining that determining intent should consider all the evidence, including circumstantial evidence:

> The issue of *who* retained the easement by private dedication in Lots 1-4 is a more complicated matter. A grantor's intent controls the scope of a dedication. Defendants contend that this Court should not look outside the four corners of the

Porters' deed to the Sand Haven Voluntary Association to determine the intent and scope of the Porters' dedication because the deed unambiguously indicates that the Porters intended to convey Lots 1-4 to the Sand Haven Voluntary Association and, therefore, only to the Sand Haven Voluntary Association's members. However, "intent to dedicate [for a common-law dedication] can be gathered from the circumstances." Indeed, "all facts and circumstances bearing on the question are considered."

> The facts and circumstances here illustrate that the Porters intended to dedicate the use of Lots 1-4 to all lot owners of Syndicate Park whose only means of accessing their property by land is through Lots 1-4. [*Id*. at 357 (citations omitted).]

The "gathered from the circumstances" language came from this Court's earlier opinion in *DeWitt v Roscommon Co Rd Comm*, 45 Mich App 579, 581; 207 NW2d 209 (1973). In *DeWitt*, the plaintiffs claimed an easement to use the north half of the defendants' privately-owned road, alleging that the original owner dedicated that land to the public at common law. *Id*. Many lot owners north of that road had deeds granting easements over the roads, but this was insufficient, according to the *DeWitt* Court, to establish an intent to dedicate to the public at large:

> Plaintiff submitted various proofs that lot owners to the north of the land owned by defendants had via deeds obtained easement rights for ingress and egress to [the] Road across the easterly 50 feet of the land conveyed to defendants. From this evidence the implication was to automatically follow that the original grantor dedicated the land in question to public use. . . . Our own conclusion is that plaintiff has not shown more than proof of an easement reserved across the east portion of the land in question by this purported evidence of 'dedication' of the land, as was similarly held in *Choals v Plummer*, 353 Mich 64; 90 NW2d 851 (1958). [*DeWitt*, 45 Mich App at 581.]

The reasoning from these cases supports that the first element of a common-law dedication—the owner's intent to offer a dedication—requires that the original grantor "clearly express an intention to make a specific offer of dedication," *Choals*, 353 Mich at 70, although "no particular form or ceremony is necessary," *Badeaux v Ryerson*, 213 Mich 642, 647; 182 NW 22 (1921). After finding the existence of a dedication, the trial court may use other circumstantial evidence of the grantor's intent, such as the historical uses and geography of the land, to determine the scope of that dedication. See *Redmond*, 293 Mich App at 357.

Once again, plaintiffs' failure to produce the title histories of the land adjoining the Paths is fatal to their case. Plaintiffs presented hundreds of pages of exhibits, but nothing in those documents, either individually or collectively, suggests a clear expression of an intent to dedicate made by an identifiable owner. Jay and Betty Van Andel acquired land adjoining North Walk and the now-vacated portion of Lakeside Road from Hotel Macatawa, Inc., in 1974. The United States acquired the northernmost land of present-day HS31 through deeds from Henry Post in 1873 and the MPA in 1884, but that land did not adjoin any of the Paths. These were the only available records of ownership interests within HS31, and neither the deeds nor any supplemental document

clearly showed an intent to create a private dedication. Plaintiffs rely on maps, flyers, newspapers, and books written by historians to show that the Macatawa Park developers intended the entire peninsula to be treated as one resort. That evidence might help to clarify the scope of a preexisting dedication, but it does not *create* a dedication.

No reasonable interpretation of the facts would save plaintiffs' claim given that the *Unverzagt* easement does not encompass recreational walks in HS31, our Supreme Court does not recognize quasi-easements for rights of way, and plaintiffs produced no evidence of a clear expression of an HS31 lot owner's intent to create a common-law private dedication. Accordingly, there was no genuine issue of material fact, and defendants were entitled to judgment as a matter of law on the issue of whether all Macatawa lot owners had an easement for recreational use of the Paths. The trial court did not err when it entered partial summary disposition for defendants.

## III. PRESCRIPTIVE EASEMENT

Next, plaintiffs argue that Gronberg and Krissoff individually acquired prescriptive easements for the recreational use of the Paths after decades of using the Paths without interruption, and the trial court erred by rejecting their claims. We disagree because plaintiffs failed prove that their use was adverse to defendants' interests.[5]

### A. STANDARD OF REVIEW

"An action for a prescriptive easement is equitable in nature," and this Court "reviews de novo the trial court's holdings in equitable actions," while a trial court's factual findings in support of such a holding are reviewed "for clear error." *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

### B. LEGAL PRINCIPLES

A party claiming a prescriptive easement must show that the party used the defendant's property in a manner that was "open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton*, 242 Mich App at 679. Unlike a claim for adverse possession, a prescriptive easement does not require exclusive use of the property. *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The claimant must prove each element by "clear and cogent evidence," which is a similar standard to clear and convincing evidence. *Astemborski v Manetta*, 341 Mich App 190, 199; 988 NW2d 857 (2022). If there is any reasonable dispute that the claimant has met these elements, then the claimant has not met his burden of proof. *Id*.

---

[5] The trial court held that plaintiffs Gronberg and Krissoff's use of the Paths was permissive, not adverse and hostile. The court did not address whether plaintiffs satisfied the other elements of a prescriptive easement, and the parties do not argue them on appeal, so we do not address them here.

A prescriptive easement inherently requires trespassing on private property. *Id*. at 198. The trespass, however, need not be malicious or motivated by ill will:

> The element of hostility or adversity "as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period." Instead, the "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." Simply put, "[a]dverse or hostile use is use inconsistent with the right of the owner, without permission asked or given," which would entitle the owner to bring an action for trespass or nuisance. Hence, "[m]ere permissive use of another's property . . . will not create a prescriptive easement." [*Id*. at 199-200 (citations omitted; alterations in original).]

This reflects the longstanding rule that "[p]eaceable occupation or use by acquiescence or permission of the owner" does not satisfy the adversity requirement. *King v Battle Creek Box Co*, 235 Mich 24, 35; 209 NW 133 (1926).

If the owner of a private right of way improves the way and leaves it open for others to access, then the use is considered permissive. *Le Roy v Collins*, 176 Mich 465, 472; 142 NW 842 (1913). In *Le Roy*, Joel Collins bought property adjoining a path that was platted as an alley. *Id*. at 468-469. At the time that Collins bought the property, "the land was broken and rough, so that in its then condition it was not possible to drive through the alley with a load." *Id*. at 470. Over time, Collins "gradually improved the alley," improving its durability and connecting it to other streets. *Id*. Collins left the alley open to the public, but "he exercised vigilance in insisting on proper use of the way and forbade improper uses, such as throwing rubbish upon it, leaving conveyances standing there overnight, or stable cleanings lying adjacent, and cutting it up in hauling dirt upon an adjoining lot." *Id*. at 472. Our Supreme Court explained that the other people who used the path did so under the implied permission of its owner[6]:

> It is undoubtedly the law that where a private way is improved by the owner and left open convenient for others, their use of it in common with the owners and those for whose special benefit it was opened is, as a rule, to be regarded as permissive only, and under an implied license. [*Id*.]

### C. DISCUSSION

### 1. POSSESSORY PERIOD

Plaintiffs argue that Gronberg's parents acquired a prescriptive easement over the Paths in 1964—15 years after they bought their cottage in 1949—and that Gronberg received the easement when he acquired his parents' cottage in 1989. If true, this would mean that Gronberg's easement was established long before defendants acquired their first property on the peninsula in 1974 and

---

[6] This rule applied to the section of the alley that Collins actually owned, but the section of the alley in dispute in the case was not owned by the plaintiffs. *Id*.

began improving and maintaining the Paths. "A party may 'tack' on the possessory periods of predecessors in interest to achieve this fifteen-year period by showing privity of estate." *Killips v Mannisto*, 244 Mich App 256, 259 (2001). However, the burden was on plaintiff Gronberg to prove by clear and cogent evidence that his parents' use of the Paths was open, notorious, adverse, and continuous during that time. See *Astemborski*, 341 Mich App at 199.

Plaintiff Gronberg failed to meet that burden. The only evidence that he presented about his parents' use of the Paths was his own testimony that he recalled walking on North Walk with them, and that his parents regularly used Lakeside Road to get to the government property within HS31. But Gronberg himself undermined that evidence when he testified that he "was not one at age ten that paid a lot of attention in terms of how [his parents] circulated other than if there was a cocktail party or something in the park they would usually walk to that." Gronberg's testimony on this issue does not amount to clear and cogent evidence that his parents openly and continuously used the Paths, so they have no interest to tack onto Gronberg's personal use of the paths after acquiring their cottage in 1989. Therefore, the fifteen-year possessory period began when each plaintiff received their property in Macatawa Park: 1989 for Gronberg and 1974 for Krissoff.

## 2. IMPLIED PERMISSION

*Le Roy* defeats plaintiffs' claim of a prescriptive easement. Defendants and their predecessors made many improvements to the Paths over the years. On the north end of Bay Road within HS31, defendants repaved the road and added seawalls to make it safer and easier to get from Bay Road to North Walk. They also installed stairs on Lakeside Way, which occurred sometime between Jay Van Andel's purchase of the property in 1974 and the land survey in 1982. Defendants also regularly planted vegetation in the sand dunes around Lakeside Way as an ongoing effort to stabilize the ground. In 1976 or 1977, defendants began a security program to guard the property, which not only benefited the Van Andels but also the other cottagers because it prevented unwanted patrons staying at the nearby motel from wandering the area after the bars closed. These facts establish that defendants continually improved the Paths.

Other evidence established that defendants left the Paths open for the convenience of others. Defendants' enforcement of their property rights was similar to Collins in *Le Roy*, who allowed the public to use the alley unless that use was destructive or a nuisance. *Le Roy*, 176 Mich at 472. Defendants' former security guard testified that in 1985, the guards "tolerated" people walking through the Paths if they looked like they belonged, including walking couples and families with strollers. On a case-by-case basis, they would turn away more disruptive people like college students, bar-goers, and recreational boaters. As of 1982, Lakeside Way did not have any signs marking it as closed, private property. They did not focus on tightening security and heavily controlling access until 2012 when they anticipated building new homes in the area, and access to the Paths was never physically blocked until the high water and COVID-19 issues in 2020. This evidence shows that defendants generally allowed anyone to use the Paths as long as they did not disrupt others.

Taken as a whole, this evidence establishes that defendants improved the Paths and left them open for the convenience of others, and others' use of the Paths under these circumstances—particularly recreational use consistent with how defendants used the Paths—can "be regarded as permissive only, and under an implied license." *Id*. In other words, because defendants improved

-12-

the Paths and generally left them open for others to freely use, plaintiffs Gronberg and Krissoff's use of the Paths did not satisfy the adversity requirement. Their walks along Lakeside Way, North Walk, and Bay Road were indistinguishable from the hundreds of other people who did the same thing over the years. They have done nothing to acquire unique rights in the property. See *Dummer v US Gypsum Co*, 153 Mich 622, 637; 117 NW 317 (1908) ("[T]he right should not depend for its enjoyment upon a similar right in others, and the party claiming it exercises it under some claim existing in his favor, independent of all others. It must be exclusive as against the right of the community at large."). Accordingly, the trial court did not clearly err by finding that plaintiffs Gronberg and Krissoff did not establish by clear and cogent evidence that their use of the Paths was adverse to defendants' interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace